MITCHELL ENGINEERING COMPANY, Plaintiff-Appellant,

v.

SUMMIT REALTY COMPANY, et al., Defendant-Respondent.

No. WD 32050.

Missouri Court of Appeals, Western District.

June 16, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 24, 1981.

Application to Transfer Denied Sept. 8, 1981.

**28**

Ronald R. McMillin, Carson, Monaco, Coil, Riley and McMillin, P. C., Jefferson City, for plaintiff-appellant.

Gordon R. Gaebler, Svoboda & Gaebler, P. C., Kansas City, for defendant-respondent.

Before PRITCHARD, P. J., and TURNAGE and CLARK, JJ.

TURNAGE, Judge.

Mitchell Engineering Company filed suit to enforce a mechanic's lien against property owned by Summit Realty Company. The trial court entered judgment in favor of Summit on a motion for summary judgment. On this appeal the sole question concerns the sufficiency of the lien statement filed by Mitchell. Reversed and remanded.

Summit entered into a contract with Trans-Missouri Builders[1] as general contractors for the construction of the Summit Plaza Center, apparently a shopping center. Trans-Missouri entered into a contract with Mitchell and on the failure of Trans-Missouri to pay the total price, Mitchell filed a suit against Trans-Missouri for the balance due and against Summit for the foreclosure of a mechanic's lien previously filed.

The lien statement filed by Mitchell described the material furnished in three documents. The first of these is a copy of an invoice indicating that Mitchell had sold to Trans-Missouri "Mitchell prefabricated steel buildings" for a contract price of $72,816.46 with change order number one adding $678.54, resulting in a total contract price of $73,540. With the sales tax added the total price was $75,838.12. A credit was shown of $7,286.15 leaving a balance due of $68,-551.97. This document indicated the buildings had been shipped to Holt's Summit Shopping Center in two shipments on October 3, 1978, and October 4, 1978. The dimensions of the three buildings was given.

Another document attached to the lien statement appears to be a copy of a proposal made by Mitchell and accepted by Trans-Missouri. This contains some abbreviations on a printed form which are undoubtedly common to industry use. It does give the dimensions of the three buildings with the type and gauge of material to be used for sheeting and flashing, together with the following statement:

"SPECIAL REQUIREMENTS: Heavy building to support 19–500 # roof top A/C units. All of the above three (3) buildings to be joined end to end, with common high sidewall, to make one (1) complete building 257' long. High sidewall to be open to eave line for masonry and glass as shown on Architectural Plans. The two (2) rigid frame columns on low sidewalls of 125' wide area to extend 4'–3" below main finish floor elevation. All other columns of 125' wide area to be at main finish floor elevation. Endwall girts on both ends of 125' wide area to be flush girts. 88 lin. ft. of masonry fire wall, in 125' wide area, to extend thru roof line. Mitchell to furnish support angles, angle anchor bolts and base flashing only for fire wall furnished by others. Roof and wall insulation not by Mitchell."

Summit contends the lien statement did not comprise a "just and true" account as required by law. Summit equates the statement filed here with the one filed in *Bernard v. Merrick*, 549 S.W.2d 561 (Mo.

---

1. The only parties on this appeal are Mitchell and Summit.

App.1977). Summit draws the analogy between the statement here and that in *Bernard* in its brief when it describes the statement filed in this case as simply stating "contract price, change order number one, revised contract price, sales tax, and total contract price."

Summit would perhaps be correct in comparing the statement with that in *Bernard* if the statement read as set out in Summit's brief. However, as noted above, the statement was in considerably more detail than Summit contends. The invoice stated that the lien was claimed for Mitchell prefabricated buildings and gave the dimensions of three such buildings. The contract proposal accepted by Trans-Missouri and made a part of the lien statement spelled out clearly, as shown above, the material that Mitchell was to furnish and how the buildings were to be erected.

■ The obligation of the sub-contractor is to "include in his lien account an itemized statement of the labor and materials furnished." *Mississippi Woodworking Company v. Maher*, 273 S.W.2d 753, 756 (Mo.App. 1954). The purpose of the lien statement has been often quoted from *Wadsworth Homes, Inc. v. Woodridge Corporation*, 358 S.W.2d 288, 291[2] (Mo.App.1962). Briefly paraphrased, this purpose is to allow land owners and others to investigate to determine if the materials actually went into the building and whether they were lienable items and whether the amount charged is proper.

■ The statement in this case was sufficient to meet the obligation cast upon Mitchell. From the statement it could be ascertained that Mitchell supplied the material for three of its prefabricated steel buildings with the dimension of the buildings and the manner in which they were to be joined to form one large building. The statement specified those materials not to be furnished by Mitchell.

The trial court erroneously concluded that the lien statement was insufficient. The judgment is reversed and this cause is remanded for further proceedings.

All concur.