**Petar GRGIC, Plaintiff-Appellant,**

v.

**Carl COCHRAN, Barbara Cochran, Federal Land Bank, Defendants-Respondents.**

No. 51531.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 27, 1987.

Motion for Rehearing and/or Transfer Denied Nov. 24, 1987.

Prudence L. Fink, Union, for plaintiff-appellant.

Isidore Ireland Lamke, Washington, for defendants-respondents.

SATZ, Presiding Judge.

This is an action to enforce a mechanic's lien. Plaintiff Petar Grgic (Grgic) appeals from a summary judgment entered in favor of defendants Carl and Barbara Cochran (Cochrans). We affirm.

The Cochrans hired a contractor to build a house for them, and the contractor hired Grgic as a sub-contractor. Grgic sued the contractor for breach of contract and filed a lien statement against the Cochran's house. A default judgment was entered against the contractor. The Cochrans, however, moved for summary judgment, contending Grgic's lien statement was defective. The trial court granted the Cochran's motion for summary judgment. This appeal followed.

There is one issue on appeal: whether Grgic's lien statement is specific enough to fulfill the relevant statutory requirements. We find it is not.

■ Section 429.080 RSMo.1978 requires a filing of a lien statement containing "a just and true account of the demand due him or them after all just credits have been given...."[1] This lien law is designed to give security to those individuals who furnished labor and materials to improve the owner's property. *S & R Builders & Suppliers, Inc. v. Marler,* 610 S.W.2d 690, 697 (Mo.App.1980). It is remedial in nature and is liberally construed to benefit those it seeks to protect. *S & R Builders, supra* at 697; *Bernard v. Merrick,* 549 S.W.2d 561, 563 (Mo.App.1977). However, the lien law is purely a creature of statute, and the policy of liberal construction does not relieve the lien claimant from substantial compliance with the statute in order to secure its benefits. *Summit Lumber Co. v. Higginbotham,* 586 S.W.2d 799, 801 (Mo. App.1979); *Bernard,* supra at 563.

■ The statute requires a "just and true account" "so that the landowners and others interested may learn from the lien statement what the lien claimant asserts he has furnished, thus permitting an investigation to be made to determine whether the materials actually went into the build-

---

1. Section 429.080 provides:
    It shall be the duty of every original contractor, every journeyman and day laborer, and every other person seeking to obtain the benefit of the provisions of sections 429.010 to 429.340, within six months after the indebtedness shall have accrued to file with the clerk of the circuit court of the proper county a just and true account of the demand due him or them after all just credits have been given,
    which is to be a lien upon such building or other improvements, and a true description of the property, or so near as to identify the same, upon which the lien is intended to apply, with the name of the owner or contractor, or both, if known to the person filing the lien, which shall, in all cases, be verified by the oath of himself or some credible person for him.

ing; whether they were lienable items, and whether the amount charged is proper." *Wadsworth Homes, Inc. v. Woodridge Corp.*, 358 S.W.2d 288, 291 (Mo.App.1962). An "original" contractor may make a "just and true account" if his lien statement simply states his account in a lump sum, without itemization. *E.g., Mississippi Woodworking Co. v. Maher*, 273 S.W.2d 753, 755 (Mo.App.1954). This lump sum statement is acceptable because the owner contracted with the "original" contractor and, therefore, knows the labor and material to be provided. *Id.* at 755. When the lien claimant is a subcontractor, however, the lien statement must be detailed and itemized. The owner does not contract with the subcontractor and, thus, is not necessarily aware of those contractual items agreed to by the "original" contractor and the subcontractor. Moreover,

> [t]he landowner has never agreed to pay the subcontractor anything and is not personally indebted to him. It is only by reason of the mechanic's lien statute that the property may be subjected to the payment of the lien claim. In this situation the lien is not necessarily for the contract price but is only for the reasonable value of the labor and materials furnished. *Id.* at 755.

Therefore, it is imperative for the subcontractor's lien statement to be detailed and itemized in order for the owner to investigate and determine the propriety of the lien claim.

■ Grgic's lien statement, a subcontractor's lien statement, is defective in several respects.[2] We need not point out all of them. The statement does not specify the quantity or types of materials used. For example, it states Grgic supplied "brick for the chimney, . . . gravel around the exterior drain pipe and other drain pipe materials. . . ." This statement of the general nature of the materials used is an inadequate basis for the owner to investigate the use of the materials and the propriety of the charges. *See, e.g., Summit Lumber Co. v. Higginbotham*, supra at 801. In addition, Grgic fails to itemize the dates his

labor was performed and the hours of his labor. A lien statement without hourly rates, the number of hours worked and the dates is insufficient. *See Bresnan v. Basic Electric Co.*, 721 S.W.2d 3, 6 (Mo.App. 1986). "The omission of individual amounts and times precludes an investigation of whether the labor charge was reasonable and, in fact, whether the labor was actually performed." *Id.*

Grgic argues his lien statement is sufficient, relying on *Mitchell Engineering Co. v. Summit Realty Co.*, 620 S.W.2d 27 (Mo. App.1981) and *S & R Builders & Suppliers, Inc. v. Marler*, 610 S.W.2d 690 (Mo. App.1980). The lien statements in these cases, however, differ significantly from Grgic's lien statement.

In *Mitchell,* the lien statement specified the dimensions of prefabricated steel buildings, the exact type of the materials used and precisely how the buildings were erected. Grgic's statement specifies no dimensions, nor the type or kind of materials used, nor the specific quantities used.

In *S & R Builders*, the lien statement did not specify the dates and hours worked nor the hourly rates. The statement did list, however, each item of material used, more than 80 items, and then a lump sum for labor. In finding the statement sufficient, the court said the labor "obviously" entailed the installation of the more than 80 items specifically listed. Here, Grgic's statement does not itemize the specific items used.

Obviously, whether a lien statement constitutes "a just and true account" depends on the facts of each case. The facts here are insufficient.

Judgment affirmed.

CRIST and KELLY, JJ., concur.

## APPENDIX

Now on this day comes Petar Grgic, d/b/a P. & G. Construction Company, and with a view to avail himself of the benefits of the statutes relating to mechanic's liens, files the account below set forth for work,

---

2. The relevant part of this lien statement is set out in the Appendix.

labor and materials furnished by him under contract with Weco Enterprises, Incorporated, the original contractor upon, to and for the buildings, sheds, fences, sidewalks, appurtenances and improvements known and numbered as Route # 1, Box 187, Boles Road, Labadie, Missouri, 63055, in Franklin County, Missouri....

.   .   .   .   .

Said real estate, building, sheds, fences, sidewalks, appurtenances and improvements belonging to and being owned by Carl E. Cochran and Barbara L. Cochran, his wife, which said account the same is herewith filed in order that it may constitute a lien upon the building, sheds, fences, sidewalks, appurtenances and improvements and the real estate above described, and the personal property furnished is as follows, to-wit:

Weco Enterprises, Incorporated

(General Contractor)

to

Petar Grgic, d/b/a P. & G. Construction Company

(Lien Claimant)

To furnishing [sic] the following work, labor and materials for the construction and erection of the building, sheds, fences, sidewalks, appurtenances and improvements located in the County of Franklin, Missouri, and situated on the above described real estate furnished between the dates of March 10, 1978 and August 30, 1978, to-wit:

All work to complete the dwelling house located on the above described real estate, pursuant to a sub-contract agreement between lien claimant Petar Grgic and Weco Enterprises, Incorporated, including installation of floor joists, all framing, exterior sheathing, hanging of dry wall ready for paint, all finished carpentry except the stairway to the second floor, installation of all exterior and interior doors, brick work for a fireplace and a stove pad including chimney and flue, all molding trim, roofing, decking, siding, underlay and wood flooring, installation of the second floor pine flooring, custom made frames for doors and windows, all exterior painting, delivery of roof, windows and other materials furnished by Weco Enterprises, Incorporated, installation of drain pipe around house.

In addition to the labor provided by Petar Grgic for the above described tasks, lien claimant provided the following materials: brick for the chimney, flues, stove pad including a brick floor and wall, gravel around the exterior drain pipe and other drain pipe materials needed to install the drain pipe around the perimeter of the dwelling house. This work was done according to two sub-contract agreements, the first was for a contract price of $17,200.00 and the second was for extra work that has been itemized above amounting to a fair and reasonable value of $2,523.00. Of the grand total for labor, materials and work of $17,723.00, $6,823.00 still remains unpaid by Weco Enterprises, Incorporated, thus the amount of this lien is $6,823.00. The first item of said account was furnished on March 10, 1978, and the last date upon which work, labor and materials were furnished was August 30, 1978, on which said date work, labor and materials were furnished for and actually entered into the construction of said building, sheds, fences, sidewalks, appurtenances and improvements and on which said date said account accrued and became due and payable. All of the items of said account were furnished under one arrangement and constituted one continuous running account. Each and every item of said account was furnished for said building, sheds, fences, sidewalks, appurtenances and improvements and personal property actually entered into the construction of said building, sheds, fences, sidewalks, appurtenances and improvements.