**CHAS. C. MEEK LUMBER COMPANY OF BRANSON, a Missouri corporation, d/b/a Meeks Building Center, and Richard Broeg, d/b/a Goff & Broeg Heating, Plaintiffs–Respondents,**

v.

**Jerry L. CANTRELL, et al., pro se, Last-named Officers and Directors of Wescorp Construction Company, Great Southern Savings & Loan Association, Defendants,**

**David R. Woolery and Doris J. Woolery, Defendants–Appellants.**

No. 17112.

Missouri Court of Appeals, Southern District, Division One.

Aug. 13, 1991.

---

David L. Smith, Gary W. Allman, Cantwell, Allman & Smith, Branson, for plaintiffs-respondents.

Donald W. Ingrum, Branson, for defendants-appellants.

MAUS, Presiding Judge.

In the underlying actions, consolidated in the trial court, plaintiff Chas. C. Meek Lumber Company of Branson (Meek) and plaintiff Richard Broeg, d/b/a Goff & Broeg Heating (Broeg), each, as subcontractors who supplied labor and materials for the construction of a new residence by David R. Woolery and Doris J. Woolery (Woolerys), sought to establish mechanic's liens against that residence. The labor and materials were supplied between July 17, 1987 and February 16, 1988. The trial court found that § 429.013 RSMo 1986 did not apply to the construction of the new residence, as distinguished from the repair and remodeling of an existing residence. It entered judgment establishing those liens. Woolerys appeal.

A statement of the basic facts is sufficient to understand and dispose of Woolerys' first point. Woolerys entered into a written contract with WESCORP Construction Company (WesCorp) for the construction of a residence for $112,500.00. WesCorp constructed the residence. In the course of that construction, Meek and Broeg supplied WesCorp with labor and materials used in construction of the dwelling. Woolerys paid WesCorp in excess of $112,500.00. WesCorp did not pay Meek or Broeg for the labor and materials so supplied. The trial court entered judgments in favor of Meek for $16,322.35 and in favor of Broeg in the amount of $3,013.82 against WesCorp. It further declared each judgment to be a lien upon the residence and tract upon which the residence was constructed.

Woolerys' first point is that the trial court erred in finding § 429.013 RSMo 1986, which was not complied with, applied only to improvement, remodeling or repair of an existing residence and did not apply to the construction of a new residence. Section 429.013 was initially enacted in 1986. It has been subsequently amended in 1989 and 1990. In general terms, § 429.013, as originally enacted and as subsequently amended, when applicable, provides no subcontractor shall have a mechanic's lien "unless an owner of the building or structure pursuant to a written contract has agreed to be liable for such costs in the event that the costs are not paid." § 429.013.2. The section then provides "[s]uch consent" shall be in statutory form. Every original contractor is required to furnish a copy of such consent to each subcontractor. It is a prerequisite to the estab-

lishment of a lien by a subcontractor "that a copy of a consent in the form prescribed in subsection 2 of this section, signed by an owner, be attached to the recording of a claim of lien." § 429.013.3. This section contains an additional provision concerning the relevance of full or partial payment to an original contractor.

Subsection 1 of § 429.013 RSMo 1986, as originally enacted, provided "[t]he provisions of this section shall apply only to the improvement, repair or remodeling of owner-occupied residential property of four units or less."

Woolerys contend that by including the word "improvement" the legislature intended the section to be applicable to the construction of a new residence. They support that contention by noting a legislative trend to protect property owners from mechanic's liens of subcontractors. Additionally, they support that contention by a comparison of § 429.013 RSMo 1986 with similar sections in bills introduced in 1986 which were not adopted. The Woolerys also find a demonstration of that intent by the 1989 amendment [1]. However, they assert the 1990 amendment [2] cannot be considered in determining the legislative intent in 1986 because, if so applied, the 1990 amendment is an ex post facto law.

These arguments need not be discussed in detail. The fundamental principles applicable to statutory construction have been clearly stated.

" 'The primary rule of statutory construction is to ascertain the intent of the lawmakers from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning.' *Blue Springs Bowl v. Spradling,* 551 S.W.2d 596, 598 (Mo. banc 1977). Where the language is clear and unambiguous, there is no room for construction. Id. This Court must be guided by what the legislature said, not by what the Court thinks it meant to say. *Missouri Public Service Co. v. Platte–Clay Electric Cooperative,* 407 S.W.2d 883, 891 (Mo. 1966)." *Metro Auto Auction v. Director of Revenue,* 707 S.W.2d 397, 401 (Mo. banc 1986).

■ Subsection 1, as originally enacted, restricts the application of the section "only to the improvement, repair or remodeling of owner-occupied residential property of four units or less." The subsection refers to "owner-*occupied*" residential property in the present tense. Residential property cannot be owner-occupied unless that residential property is in existence. Further, the subsection does not use the term "improvement" as a noun. It uses the term as a verb.

Paraphrasing the definitions found in Webster's New Collegiate Dictionary (1977), the words "improvement", "repair" and "remodel" are defined as follows:

*improvement*—to improve; the act or procedure of improving. improve means—to make better; to make beneficial additions or changes.

*repair*—to restore to sound condition after damage or injury; fix; to set right—remedy.

*remodel*—to remodel again; to remake with a new structure; renovate—reconstruct.

---

1. The 1989 amendment added the following sentence to subsection 1: "The term 'owner-occupied residential property' shall include residential property occupied by the owner and property which the owner intends to occupy and does occupy as a residence within a reasonable time after the completion of the improvement, repair or remodeling which is the basis for the lien sought pursuant to this section." § 429.013.1.

2. That amendment defined "owner" and added the following sentences: "The term 'residential property' means property consisting of four or less existing units to which repairs, remodeling or additions are undertaken. This section shall not apply to the building, construction or erection of any improvements constituting the initial or original residential unit or units or other improvements or appurtenances forming a part of the original development of the property. The provisions added to this subsection in 1990 are intended to clarify the scope and meaning of this section as originally enacted." § 429.-013.1.

In order to improve, repair or remodel a residence, it must be in existence. The subsection cannot refer to a newly-constructed residence, as there would have been no existing structure to improve, repair or remodel. The language of subsection 1, as originally enacted, is clear and unambiguous and there is no room for extrinsic considerations to aid construction. As originally enacted, § 429.013 RSMo 1986 did not apply to a newly-constructed residence. Woolerys' first point is denied.

Woolerys' next point is that the trial court erred in declaring the judgment of Broeg against WesCorp to be a lien because Broeg's mechanic's lien statement did not contain a "just and true account" of his claim as required by § 429.080 RSMo 1986. Broeg attempted to comply with this requirement by attaching to his lien statement a copy of two handwritten bills on his statement forms. The body of the first bill reads:

| | | |
|---|---|---:|
| "TWX 742 Trane Heat Pump installed with TWV 736 air handler and duct work as per contract. | | 4501.00 |
| 200 amp CH box with 80 outlets as per contract with meter base, | | 2275.00 |
| Extra outlets to be billed on separate billing. | | |
| incl. in prices | | (180.53) |
| | Total | 6776.00 |
| | Bal | 1500.00" |

The body of the second bill reads:

| | | |
|---|---:|---:|
| "167 openings | | |
| 80 per contract | | |
| 87 at $15.00 ea. | | 1305.00 |
| 1 stove pigtail | 12.50 | 12.50 |
| 1 disposer pigtail | 6.55 | 6.55 |
| 24 light bulbs | .72 ea. | 18.00 |
| | | 1342.05 |
| | tax | 41.77 |
| | | 1383.82 |
| Move main disconnect to basement utility room | | 130.00 |
| | Total | 1513.82" |

The applicable law has been summarized. "The statute requires a 'just and true account' 'so that the landowners and others interested may learn from the lien statement what the lien claimant asserts he has furnished, thus permitting an investigation to be made to determine whether the materials actually went into the building; whether they were lienable items, and whether the amount charged is proper.' *Wadsworth Homes, Inc. v. Woodridge Corp.*, 358 S.W.2d 288, 291 (Mo.App.1962). An 'original' contractor may make a 'just and true account' if his lien statement simply states his account in a lump sum, without itemization. E.g., *Mississippi Woodworking Co. v. Maher*, 273 S.W.2d 753, 755 (Mo.App. 1954). This lump sum statement is acceptable because the owner contracted with the 'original' contractor and, therefore, knows the labor and material to be provided. Id. at 755. When the lien claimant is a subcontractor, however, the

lien statement must be detailed and itemized...." *Grgic v. Cochran,* 740 S.W.2d 358, 359–60 (Mo.App.1987).

The itemization in these bills, with the exception of the heat pump and air handler, is in generic terms and is inadequate to identify the materials used. By the two bills, "no amount, either individually or in a lump sum, is listed for the labor furnished by the individual electricians for whom the trustees assert the mechanic's lien. No hourly rates are disclosed, nor are the numbers of hours worked by each electrician, nor the dates on which those hours were spent working on the project." *Bresnan v. Basic Elec. Co.,* 721 S.W.2d 3, 6 (Mo.App. 1986). The lien statement incorporating these two bills is properly characterized by the following language:

"Appellant's account wholly lacks the required itemization. Although his account generally describes the nature of the work done, it is entirely inadequate to inform anyone, save the appellant, whether the materials and labor he claims to have furnished to The Edge actually went into the restaurant, whether these items were lienable, and whether the amounts charged were reasonable and proper." *Zundel v. Edge, Inc.,* 705 S.W.2d 113, 115 (Mo.App.1986).

The trial court erred in finding Broeg's lien statement was a just and true account within the meaning of § 429.080 RSMo 1986. See *S & R Builders and Suppliers, Inc. v. Marler,* 610 S.W.2d 690 (Mo.App. 1980); *Summit Lumber Co., Inc. v. Higginbotham,* 586 S.W.2d 799 (Mo.App. 1979); McCarter, *Missouri Mechanic's Liens,* 46 J.Mo.B. 201, April–May 1990.

Woolerys' third point is that the judgment of the trial court was erroneous in awarding Meek an erroneously-calculated judgment. Woolerys contend the judgment should be for $15,209.38, rather than $16,322.35. Meek agrees that the point has merit.

Woolerys' fourth point is that the judgment of the trial court was erroneous in awarding Broeg a judgment for $3,013.82, with interest at 9% per annum from February 16, 1988. Woolerys contend that the interest should have run from April 11, 1988. Broeg agrees.

The judgment of the trial court awarding Meek a judgment against the last-named officers and directors of WesCorp, amended to show the amount of the judgment to be $15,209.38, and declaring the same to be a lien upon the Woolery property and superior to the lien of the deed of trust of Great Southern Savings & Loan Association, is affirmed. The judgment of the trial court in favor of Broeg against WesCorp in the amount of $3,013.82, with interest from the date of April 11, 1988, is affirmed. The judgment of the trial court declaring Broeg's judgment against WesCorp to be a lien upon the Woolery property is reversed. The costs are taxed one-half against Woolerys and one-half against Broeg.

PREWITT and CROW, JJ., concur.