**COMMERCIAL OPENINGS, INC., Appellant,**

v.

**Richard L. MATHEWS, d/b/a, Mathews & Associates, Inc., et al., Respondents.**

**No. 73608.**

Supreme Court of Missouri, En Banc.

Nov. 19, 1991.

Rehearing Denied Dec. 17, 1991.

2. *Bartlett's Familiar Quotations* 802 (14th ed. 1968) (quotation from Anatole France).

Christopher Patterson, North Kansas City, for appellant.

Douglas Dalgleish, Irvin E. Blond, Kansas City, for respondents.

COVINGTON, Judge.

Commercial Openings, Inc., a materialman who supplied doors, frames and accessories to a contractor, Richard L. Mathews, filed a petition to enforce a mechanic's lien pursuant to § 429.010, RSMo 1986. The materials were used in the construction of commercial improvements on real estate owned by a Missouri limited partnership, The Bannister Company, whose general partners are Ron Matsch, James E. Jorgensen and David A. Schoenstadt. The trial court dismissed the petition for failure to state a claim, finding that Commercial Openings' lien statement failed to provide a just and true account because it did not include itemization by price. The Missouri Court of Appeals, Western District, affirmed. This Court granted transfer to consider the question of the sufficiency of a mechanic's lien statement of a subcontractor to impress a lien against a landowner when the lien statement sets forth a detailed description of the materials provided but states only a lump sum price of the materials. The judgment is reversed and the cause remanded.

The Bannister Company contracted with Richard L. Mathews, d/b/a Mathews and Associates, Inc., as general contractor for the construction of commercial improvements upon realty owned by Bannister at 9607 Elmwood, Kansas City. Mathews then contracted with Commercial Openings, Inc., a materialman, to supply doors, frames and accessories. Mathews used all of the materials supplied by Commercial under the contract in the construction project on Bannister's Elmwood real estate. Bannister appears to have paid Mathews in full and to have received signed waivers from Mathews for all subcontractors. Commercial, however, maintains that it was never paid by Mathews, who became insolvent, for the $33,733.87 worth of materials supplied.

In February of 1988, Commercial filed its statement of mechanic's lien on Bannister's Elmwood property. The mechanic's lien was for materials only. The lien statement set forth the following description of the material:

Base contract, plus additions and deductions per attached sheet (Invoice and attached sheet included as Exhibit A, pages 1 and 2, attached to this lien statement) $33,733.87

The base contract, plus additions and deductions, include the following items:

29 Hollow Metal Frames

11 Sidelight Frames

22 Borrowed Light Frames

11 Hollow Metal Doors

34 Wood Doors

1 Lot Toilet Accessories

1 Lot Toilet Partitions

Other materials as included in Exhibit B, Pages 1 and 2.

All as summarized in the Material Schedule, Exhibit C, pages 1, 2, & 3.

Exhibits A, B, and C are attached hereto and made a part hereof as if fully set out herein.

Exhibit A included the base contract bid by Commercial along with an addition and deduction sheet indicating changes in the original bid contract. The sheet reflected by item the prices for additions and deletions of frames, doors and hardware. Exhibit B included a "Material Identification and Packing List" that detailed the number of units, code, product description, product nomenclature and manufacturer of each item of the finished hardware provided. Exhibit C, a "Material Schedule" listed each opening (doorway) by blueprint number and described the frame, door and hardware provided for the doorway. Com-

mercial individually enumerated by part and type all items of material that Commercial provided to the Bannister property.

In October of 1988, Bannister filed a motion for summary judgment together with suggestions in support stating that the lien statement failed to provide the statutorily required itemization of prices charged for materials. Commercial did not respond to the motion for summary judgment. On March 16, 1989, the trial court sustained Bannister's motion as one for failure to state a claim. On March 23, 1989, Commercial filed a motion to vacate and suggestions in opposition to defendant's motion for summary judgment. The trial court overruled the motion on April 5, 1989. Commercial then proceeded to trial against Mathews, the contractor, on breach of contract and *quantum meruit* claims. The trial court entered judgment for Commercial and against the contractor in the sum of $33,733.87. Commercial appealed from the ruling on motion for summary judgment.

■ Before addressing Commercial's claim of error, it is first necessary to deal with Bannister's claim that Commercial waived its right to appeal by failing to respond to Bannister's motion for summary judgment. Bannister relies on *Rule 74.-04(e)* and *Westbrook v. Mack*, 575 S.W.2d 921 (Mo.App.1978). Bannister's reliance is misplaced. Since there was no factual dispute between the parties, *Rule 74.04(e)* does not apply. The *Westbrook* case deals with a challenge for the first time on appeal to the validity of sworn statements filed in the trial court, thus is not applicable. The contention is meritless.

Commercial's sole point on appeal alleges that the trial court erred in finding that the mechanic's lien statement did not provide a just and true account of the materials provided. Commercial contends that because the lien statement contained a detailed list of all materials provided and contained a lump sum price, the statement complied substantially with the requirements of the mechanic's lien statute.

Missouri's mechanic's lien law is designed "to give security to mechanics and materialmen for labor and material furnished in improving the owner's property. The law should be construed as favorably to those persons as its terms will permit." *S & R Builders & Suppliers, Inc. v. Marler*, 610 S.W.2d 690, 697 (Mo.App.1980). (citations omitted). The standard of review in court-tried mechanic's lien cases requires that the decree of the trial court be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *S & R Builders & Suppliers, Inc. v. Marler*, 610 S.W.2d at 692, citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Since there is no factual dispute between the parties, the only question is one of statutory interpretation.

Section 429.080, RSMo 1986, provides in pertinent part:

> It shall be the duty of every original contractor, every journeyman and day laborer, and every other person seeking to obtain the benefit of the provisions of sections 429.010 to 429.340, within six months after the indebtedness shall have accrued to file with the clerk of the circuit court of the proper county *a just and true account of the demand due* him or them after all just credits have been given, which is to be a lien upon such building or other improvements, and a true description of the property, or so near as to identify the same, upon which the lien is intended to apply, ... (Emphasis added).

The terms of the statute require the filing of a "just and true account." The requirement is made to ensure that the landowner and others interested may discern from the lien statement information sufficient to permit an investigation to determine whether the materials the claimant asserts he has furnished were actually used in the construction of the building, whether they were lienable items, and whether the amount charged is proper. *Wadsworth Homes, Inc. v. Woodridge Corp.*, 358 S.W.2d 288, 291 (Mo.App.1962).

To facilitate fulfillment of the statutory requirement to file a just and true account,

Missouri courts have developed distinct requirements for general contractors and subcontractors. "An 'original' [general] contractor may make a 'just and true account' if his lien statement simply states his account in a lump sum, without itemization." *Grgic v. Cochran,* 740 S.W.2d 358, 360 (Mo.App.1987) (citation omitted). A subcontractor, on the other hand, must "include in his lien account an itemized statement of the labor and materials furnished." *Mississippi Woodworking Co. v. Maher,* 273 S.W.2d 753, 756 (Mo.App.1954) (citation omitted).

The reason for the distinction is clear. The owner contracts directly with the general contractor, thus knows or should know what materials were provided by the contractor. *Grgic v. Cochran,* 740 S.W.2d at 360. Subcontractors, however, do not contract directly with the owner. The owner, therefore, may not be charged with knowledge of the materials the subcontractor agreed to supply under its contract with the general contractor. *See id.*

■ The question of adequacy of the subcontractor's lien statement thus turns upon whether the statement provides detail and itemization sufficient to enable the owner to investigate and determine the propriety of the lien claim. *See id.* Identification of the furnished material is essential to the facilitation of the owner's investigation. *See, e.g., Meek Lumber Co. of Branson v. Cantrell,* 813 S.W.2d 936 (Mo.App. 1991); *Mitchell Eng'g Co. v. Summit Realty Co.,* 620 S.W.2d 27 (Mo.App.1981). If the owner cannot determine from the lien statement what materials were provided by the subcontractor, the owner is without means to determine whether the materials actually went into the building, were lienable items, and were properly charged. *See Meek Lumber Co.,* 813 S.W.2d at 939–40. Failure to itemize with specificity the quantity and types of materials used will therefore render a subcontractor's lien statement insufficient. *Grgic v. Cochran,* 740 S.W.2d at 360.

■ By contrast, failure to itemize individual prices for furnished material has never been regarded as fatal to the sufficiency of a subcontractor's lien statement. *See, e.g., Glasco Elec. Co. v. Best Elec. Co.,* 751 S.W.2d 104, 108 (Mo.App.1988); *S & R Builders & Suppliers, Inc. v. Marler,* 610 S.W.2d at 696–97. All that is required is that the lien statement "advise the owner or the public of the *total amount due* and the nature of the materials furnished." *Glasco Elec. Co. v. Best Elec. Co.,* 751 S.W.2d at 108 (emphasis added). The reason is that failure to list each item's price does not impair an owner's ability to investigate the validity of the lien. Since a mechanic's lien is essentially an action in *quantum meruit,* the subcontractor is entitled only to the reasonable value of the material furnished, not the contract price. *See Mississippi Woodworking Co. v. Maher,* 273 S.W.2d at 755. As a consequence, so long as the subcontractor adequately identifies the furnished material, the owner is provided with information sufficient to undertake independent investigation to ascertain the reasonable value of the furnished materials. Should the owner's calculation of reasonable value differ markedly from the total proffered by the subcontractor, the owner is free to challenge the amount of the lien.

■ All parties to the present case concede that Commercial's lien statement adequately identified the materials provided. Since the statute does not require itemization of prices, and since itemization by price is not necessary to fulfill the purposes underlying the just and true account requirement, there is no reason for courts to impose such a requirement. Commercial's itemized list of materials accompanied by a lump sum total was sufficient to constitute a just and true account of the demand due.

The cause is reversed and remanded for further proceedings.

All concur.