

# Supreme Court of Missouri
## en banc

BRENTWOOD GLASS COMPANY, INC.,      )     *Opinion issued August 23, 2016*
                         )
                 Appellant,     )
                         )
v.                             )     No.  SC94038
                         )
PAL'S GLASS SERVICE, INC.,       )
                         )
                 Defendant,    )
                         )
CLAYCO, INC., CORNERSTONE VI, LLC,  )
ST. LOUIS COUNTY, NATIONAL CITY BANK )
of the MIDWEST, N.A., PAUL M. MACON,   )
UMB BANK, N.A., and VICTOR ZARILLI,   )
                         )
                 Respondents.  )

APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
The Honorable Richard C. Bresnahan, Judge

**PER CURIAM**

Brentwood Glass Company, Inc., appeals the circuit court's judgment in favor of defendants on two claims:  its mechanic's lien claim for unpaid work on a construction project and its claim that St. Louis County failed to require a public works construction bond mandated by section 107.170.[1]  This Court granted transfer after opinion by the court of appeals.  Mo. Const. art. V, sec. 10.

---

[1] All statutory references are to RSMo 2000, unless otherwise indicated.

The defendants were not entitled to summary judgment on Brentwood Glass's mechanic's lien claim against Cornerstone VI, LLC. While a mechanic's lien may not attach to a building, land, or improvements owned by a public entity, Brentwood Glass may bring its mechanic's lien claim against Cornerstone's leasehold interest. Additionally, genuine issues of material fact exist regarding whether the lien notice was timely and whether the lien statement provided a just and true account of the demand due. As to Brentwood Glass's bond claim against the County, judgment was proper because Cornerstone was not a "contractor" under section 107.170.1(1). Furthermore, Brentwood Glass did not name a party against whom it could recover on its bond claim.

Accordingly, judgment on Brentwood Glass's mechanic's lien claim is reversed as to Cornerstone. In all other respects, the judgment is affirmed. The cause is remanded.

**Factual and Procedural Background**

The St. Louis County council adopted a resolution expressing its intent to issue industrial revenue bonds to finance the County's purchase and development of a property known as Six City Place Drive. The County planned to develop the property for the headquarters of Smurfit-Stone Container Enterprises, Inc. The resolution authorized two companies, Smurfit-Stone and Cornerstone, to proceed with the "purchase, construction and equipping" of the development, "including the entering into of contracts," and expressed the County's intent to lease the property to Smurfit-Stone and Cornerstone.

The County ultimately passed an ordinance finalizing the comprehensive plan to finance and develop the property. As part of the plan, the County was to issue industrial revenue bonds to finance the project, upon which only Cornerstone could draw.

2

Cornerstone and the County also executed a "Lease Agreement." The agreement provided for more than a lease and, therefore, will be referred to as a "contract."

The contract required Cornerstone to construct the project "on behalf of the County" and authorized Cornerstone to act "as the agent of the County." As the County's agent, the contract required Cornerstone to "promptly notify the County of the imposition of [a mechanic's] lien of which the Company is aware[.]" Cornerstone deeded the property to St. Louis County; on the same day, the County issued the industrial revenue bonds to finance the project.

Clayco, Inc., the general contractor for the project, subsequently entered into a subcontract with Pal's Glass to supply glass and glazing work. Pal's Glass, in turn, entered into a sub-sub-contract with Brentwood Glass for some of this work. Neither Cornerstone nor any contractor working on the project obtained a bond that would comply with section 107.170.2.

Pal's Glass initially agreed to pay Brentwood Glass a firm, fixed price for the labor and material. Any changes to the sub-subcontract were required to be made by a change order in writing by the subcontractor. Pal's Glass and Brentwood Glass revised the contract via change order once. Other change orders, however, were proposed but not executed. Brentwood Glass performed extra work not reflected in the sub-subcontract price or a change order.

Brentwood Glass was not paid for any work done after January 12, 2007, but presented evidence that it continued to work on the project after this date. On July 27, 2007, Brentwood Glass served notice of its intent to file a mechanic's lien. The notice was

3

served on Cornerstone, not the County. Having still not received payment, Brentwood Glass filed its mechanic's lien. The lien listed Cornerstone as the owner of the property and claimed $1,061,464.08 in unpaid work.

Brentwood Glass then filed a nine-count petition against Pal's Glass, Clayco, Cornerstone, the County, UMB Bank, National City Bank of the Midwest, Paul M. Macon, and Victor Zarilli.[2] In Count I, Brentwood Glass asserted a breach of contract claim against Pal's Glass. In count VIII, Brentwood Glass asserted a mechanic's lien claim against all defendants. In count IX, Brentwood Glass asserted an action against the County for allegedly failing to require a payment bond pursuant to section 107.170. Pal's Glass admitted to owing $593,261.47 and consented to a judgment against it for that amount and costs.

The defendants filed a motion for summary judgment on the mechanic's lien claim. The County also asserted it was entitled to summary judgment on the bond claim because section 107.170 did not apply. The circuit court entered judgment in favor of the defendants. Brentwood Glass appeals.[3]

### Standard of Review

On appeal, an appellate court reviews summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

---

[2] National City Bank of the Midwest was the bond lender, and UMB Bank was the holder of the bonds. Paul M. Macon was the trustee of the deed of trust securing the bonds to National City Bank, and Victor Zarilli was the trustee of the deed of trust securing the bonds held by UMB Bank.

[3] The circuit court granted judgment on all claims and causes of action. Brentwood Glass does not appeal the circuit court's judgment other than on counts VIII and IX.

Summary judgment is proper when the movant "show[s] a right to judgment flowing from facts about which there is no genuine dispute." *Id.* at 378. A genuine dispute exists when "the issue, or dispute, [is] a real and substantial one – one consisting not merely of conjecture, theory and possibilities." *Id.* Evidence in the record is viewed "in the light most favorable to the party against whom judgment was entered" with "the benefit of all reasonable inferences from the record." *Id.* at 376.

**Analysis**

**I**

A mechanic's lien is an equitable remedy with "the purpose of giving security to mechanics and material[men] for labor and materials furnished in improving the owner's property." *Bob DeGeorge Assocs., Inc. v. Hawthorn Bank*, 377 S.W.3d 592, 598 (Mo. banc 2012) (internal quotations omitted). As such, "the provisions of the mechanics' lien law should be interpreted so as to carry out the object ... [of] the security of the classes of persons named in the act, upon its provisions being in good faith substantially complied with on their part." *Putnam v. Ross*, 46 Mo. 337, 338 (Mo. 1870). "As a general rule, statutes relating to mechanic's liens should be liberally construed in favor of lien enforceability." *State ex rel. Springfield Underground, Inc. v. Sweeney,* 102 S.W.3d 7, 9 (Mo. banc 2003).

The mechanic's lien filed by Brentwood Glass does not specify whether it is seeking a lien against the County's freehold property interest or against Cornerstone's leasehold interest. But the mechanic's lien statutes do not require such designation.

5

**A**

Under section 429.010, RSMo Supp. 2005, a mechanic's lien may be brought against an owner's freehold interest in property:

> [a]ny person who shall do or perform any work or labor ... or furnish any material, fixtures, engine, boiler or machinery for any building, erection or improvements upon land ... under or by virtue of any contract with the owner or proprietor thereof, or his or her agent, trustee, contractor or subcontractor ... upon complying with the provisions of sections 429.010 to 429.340, shall have for his or her work or labor done ... a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated[.]

Public policy, however, prohibits the attachment of a mechanic's lien on the buildings, land, or improvements owned by a public entity. *Redbird Eng'g Sales, Inc. v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, 806 S.W.2d 695, 697 (Mo. App. 1991).

The County owned the property at the time that Brentwood Glass began working on the building, and the contract between the County and Cornerstone provided that any improvements installed in the building immediately became the property of the County. As such, the County is protected by "the general rule that property owned by a county or other municipal corporation, and used for public purposes cannot be sold on execution." *Sec. State Bank v. Dent Cnty.*, 137 S.W.2d 960, 961 (Mo. 1940) (internal quotations omitted). Brentwood Glass may not, therefore, perfect its mechanic's lien against the County.

**B**

Section 429.070.2 also establishes a right to a mechanic's lien against a leasehold interest:

> Every mechanic, person or corporation who shall erect or construct any building, plant, improvement, or erection, or who shall furnish any material, ... or other personal property upon either licensed or leased lots or lands under or by virtue of any contract or account with the owner or proprietor of the license or lease or with his or its agent, ... , upon complying with the provisions of sections 429.010 to 429.340, shall have a lien upon such building, plant, improvement, erection, and also upon such materials, fixtures, ... and such other personal property and also upon the license or lease on such lots or lands to the full extent of the number of acres or lots held under such license or lease ... .

Although the County retained some control over Cornerstone's leasehold interest, its contract with Cornerstone authorized, under certain circumstances, Cornerstone to assign its leasehold interest without the County's prior written consent. Because the County anticipated circumstances that would end its control over the leasehold, Brentwood Glass was entitled to a mechanic's lien against Cornerstone's leasehold interest without violating public policy concerns. Accordingly, Brentwood Glass may have the legal right to perfect its mechanic's lien against Cornerstone's leasehold interest.[4]

## II

---

[4] After Brentwood Glass filed this action to perfect its lien against Cornerstone's leasehold interest, but before judgment was entered below, Cornerstone acquired the County's reversionary interest (i.e., the fee) as it was required to do under the lease. Generally, a mechanic's lien on a leasehold interest may be enforced by selling the leasehold at execution. *Deatherage v. Sheidley*, 50 Mo. App. 490, 496 (Mo. App. 1892); *see also* section 429.070.4. The legal effect of the enforcement of the acquisition of the fee by Cornerstone was not raised, briefed, or argued by any party on appeal and, therefore, is not addressed by this Court. The Court does note, however, that section 8.5 of the contract between the County and Cornerstone provided that Cornerstone would "not directly or indirectly create, incur, assume or suffer to exist any lien on or with respect to the Project" and section 11.2 provided that the County would convey the fee to Cornerstone subject to "those liens and encumbrances resulting from the failure of [Cornerstone] to perform or observe any of the agreement on its part contained in this [contract]."

7

To enforce a mechanic's lien, a party must comply with the requirements of the statute, including proper notice, timeliness, and an adequate lien statement. Brentwood Glass contends that the circuit court erred in granting summary judgment because there were genuine issues of material fact as to each of these requirements.

To determine whether genuine issues of material fact exist, a court may consider evidence in "discovery, exhibits or affidavits that demonstrate specific facts showing there is a genuine issue for trial." Rule 74.04(c)(2). Courts do not weigh conflicting evidence or make credibility determinations. *Powel v. Chaminade Coll. Preparatory, Inc.,* 197 S.W.3d 576, 578 (Mo. banc 2006). Instead, summary judgment tests "simply for the existence, not the extent" of genuine issues of material fact, viewing the evidence in the light most favorable to the non-moving party. *ITT Commercial Fin.*, 854 S.W.2d at 378. "A factual question exists if evidentiary issues are actually contested, are subject to conflicting interpretations, or if reasonable persons might differ as to their significance." *Martin v. City of Washington*, 848 S.W.2d 487, 492 (Mo. banc 1993).

In response to the defendants' statement of uncontroverted material facts, Brentwood Glass filed excerpts of depositions, affidavits, contracts, and other records. Brentwood Glass maintains that this evidence establishes genuine issues of material fact.

## A

Under section 429.100, a party must provide timely notice of its intent to file a mechanic's lien to the owner of the property or the owner's agent as a condition precedent to creating a valid lien:

> Every person except the original contractor, who may wish to avail himself of the benefit of the provisions of sections 429.010 to 429.340, shall give ten days' notice before the filing of the lien, as herein required, to the owner, owners or agent, or either of them, that he holds a claim against such building or improvement, setting forth the amount and from whom the same is due.

Brentwood Glass gave notice to Cornerstone and, therefore, fulfilled the statutory requirement to give notice of its intent to file a mechanic's lien as to Cornerstone's leasehold interest. Accordingly, the circuit court erred in granting judgment for lack of proof of notice under section 429.100.

## B

Section 429.080, RSMo Supp. 2005, requires that a lien be filed "within six months after the indebtedness shall have accrued." Indebtedness accrues "when the last labor is performed or the last material is furnished under an agreement." *Manning Constr. Co., Inc. v. MCI Partners, LLC*, 419 S.W.3d 134, 137-38 (Mo. App. 2013) (internal quotations omitted). The date when labor was last performed is a question of fact. *Id.* at 138.

Brentwood Glass presents evidence that an employee installed bathroom mirrors and caulking between February 5, 2007, and February 9, 2007; installed vertical covers and exterior mullions on the storefront on February 13, 2007; and observed a water test to ensure that the property's windows were sealed properly on February 20, 2007. In contrast, the defendants assert that "the only substantial evidence regarding when [Brentwood Glass's] work ended on the Project was January 31, 2007," and "[a]ny other 'work' allegedly performed by [Brentwood Glass] was manufactured after-the-fact in an unsuccessful effort to salvage [Brentwood Glass's] untimely lien."

9

The arguments made by defendants rely on evidence that contradicts or disputes the evidence presented by Brentwood Glass. Viewing the evidence in the light most favorable to Brentwood Glass, there is a genuine issue of material fact regarding the last day Brentwood Glass worked on the project and whether the lien was timely filed.

### C

Section 429.080, RSMo Supp. 2005, requires that a lien statement contain "a just and true account of the demand due ... after all just credits have been given[.]" A lien statement must substantially comply with the requirements of section 429.080. *Springfield Underground,* 102 S.W.3d at 10. "The question of adequacy of [a] subcontractor's lien statement thus turns upon whether the statement provides detail and itemization sufficient to enable the owner to investigate and determine the propriety of the lien claim." *Commercial Openings, Inc. v. Mathews*, 819 S.W.2d 347, 350 (Mo. banc 1991).

To arrive at its demand, Brentwood Glass's lien statement contained an itemized record of all labor and materials it claimed to have provided. Brentwood Glass then deducted the total amount it was paid by Pal's Glass and Clayco. By this calculation, Brentwood Glass's lien statement showed $1,061,464.08 in unpaid charges. The defendants do not offer any evidence that the lien statement as presented was not sufficient to investigate the propriety of the lien claims.

The inclusion of nonlienable items or honest mistakes in lienable items does not automatically invalidate the lien statement. *Sears, Roebuck & Co. v. Seven Palms Motor Inn, Inc.,* 530 S.W.2d 695, 698-99 (Mo. banc 1975). The lien statement can still be just and true so long as the items included are "the result of honest mistake or inadvertence

10

without intent to defraud[.]"[5] *Id.* at 699. When the merits of a claim rests on disputes "of elusive facts such as intent, motive, fraud, duress, undue influence, mental capacity and the like" then "summary judgment is seldom appropriate." *Crow v. Crawford & Co.*, 259 S.W.3d 104, 113 (Mo. App. 2008).

Brentwood Glass admits that the lien statement contained mistakes but contends that its lien statement substantially complied with the statute because any inaccuracies were honest mistakes made without an intent to defraud. In contrast, the defendants argue that the lien statement was not a "just and true" account of the demand due because the lien statement included: (a) work waived by lien waivers; (b) extra work not allowed by the sub-subcontract or reflected in a change order; (c) non-contract hourly labor-rates; and (d) payments Clayco made to Brentwood Glass's subcontractors and material suppliers. Although the defendants list potentially nonlienable items claimed in Brentwood Glass's lien statement, the only evidence they provide that Brentwood Glass included this work with an intent to defraud is that the items may not have been lienable as a matter of law.

In contrast, Brentwood Glass offers evidence that it included the items by honest mistake or by inadvertence without an intent to defraud. For example, Brentwood Glass presented evidence that Pal's Glass expressly ordered extra work and directed Brentwood Glass not to submit a demand for payment of the extra work until all charges for the extra

---

[5] The defendants contend that the lien claimant has the burden to prove that it substantially complied with the statute and that any nonlienable charges were included due to an honest mistake. To defend a motion for summary judgment, Brentwood Glass must show only that evidence exists of facts that are "actually contested, are subject to conflicting interpretations, or if reasonable persons might differ as to their significance." *Martin*, 848 S.W.2d at 492.

11

work could be submitted at once. Brentwood Glass also asserts that the non-contract $70 labor rate included in the statement was the reasonable value of its labor, in compliance with the mechanics' lien standard provided in *Dave Kolb Grading, Inc. v. Lieberman Corp.*, 837 S.W.2d 924, 931 (Mo. App. 1992), which states that "[t]he lien, therefore, is not necessarily for the contract price but is only for the reasonable value of the labor and materials furnished." Additionally, although Brentwood Glass admits it cannot recover the payments Clayco paid to Brentwood Glass's subcontractors and material suppliers, testimony provided that because Brentwood Glass did not know Clayco paid these charges, these charges were included by honest mistake.

Viewed in the light most favorable to the non-movant, Brentwood Glass has presented evidence that nonlienable items it included in its lien statement could have been included by honest mistake or inadvertence without intent to defraud. As such, a genuine issue of material fact exists regarding whether the lien statement provided a just and true account in compliance with section 429.080, RSMo Supp. 2005.

In light of the record, the circuit court erred in granting judgment on Brentwood Glass's mechanic's lien claim. Judgment on Brentwood Glass's mechanic's lien claim is affirmed as against the County, but reversed as against Cornerstone.

### III

Brentwood Glass additionally argues that it was error to grant judgment as to its public bond claim against the County. It was not.

**A**

Section 107.170.1 requires the bond of a "contractor" that "*provides* construction services under contract to a public entity," not a party that merely arranges for such services to be provided by others. (emphasis added). The legislature's careful selection of words is presumed meaningful. *Hyde Park Hous. P'ship v. Dir. of Revenue*, 850 S.W.2d 82, 84 (Mo. banc 1993). Cornerstone did not "provide construction services" under its contract with the County and is, therefore, not a "contractor" under section 107.170.1.

**B**

Even if section 107.170 had required a bond in this case, Brentwood Glass's claim under that statute would still fail because Brentwood Glass did not name a party against whom it could recover. The court of appeals previously has held certain individual officials – but not a public entity itself – liable for failing to require contractors to furnish a bond under the statute. *See, e.g.*, *Energy Masters Corp. v. Fulson*, 839 S.W.2d 665, 670 (Mo. App. 1992). Brentwood Glass sued only the County, and not any individual public official. The decisive fact is that the County – as a political subdivision – is immune from suit under the doctrine of sovereign immunity. *State ex rel. Missouri Dep't of Agric. v. McHenry*, 687 S.W.2d 178, 182 n.5 (Mo. banc 1985); section 537.600.

Unless expressly waived by statute, sovereign immunity bars suit against the government or its subdivisions for the actions of their employees. *State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell*, 91 S.W.3d 612, 615 (Mo. banc 2002). No such waiver exists in this statute. *See* section 107.170. Accordingly, even if Brentwood Glass

13

had stated (or is allowed to state on remand) a valid claim under the bond statute, it would be unable to recover from the party against whom it made that claim.

The provisions in the judgment granting summary judgment on Brentwood Glass's public works construction bond claim under section 107.170.1(1) are affirmed.

## Conclusion

The judgment is affirmed in part and reversed in part. Judgment on Brentwood Glass's mechanic's lien claim is reversed as to its claim against Cornerstone's leasehold interest. In all other respects, the judgment is affirmed. The cause is remanded.

Fischer and Wilson, JJ., concur; Breckenridge, C.J.,
concurs in part and dissents in part in separate opinion
filed; Stith, J., concurs in opinion of Breckenridge, C.J.;
Draper, J., concurs in part and dissents in part in separate
opinion filed; Teitelman and Russell, JJ., concur in opinion
of Draper, J.



# SUPREME COURT OF MISSOURI
## en banc

BRENTWOOD GLASS COMPANY, INC.,     )
     )
     Appellant,     )
     )
v.     )     No.  SC94038
     )
PAL'S GLASS SERVICE, INC.,     )
     )
     Defendant,     )
     )
CLAYCO, INC., CORNERSTONE VI, LLC,     )
ST. LOUIS COUNTY, NATIONAL CITY BANK     )
of the MIDWEST, N.A., PAUL M. MACON,     )
UMB BANK, N.A., and VICTOR ZARILLI,     )
     )
     Respondents.     )

### Opinion Concurring in Part and Dissenting in Part

I concur in the holdings in sections I and II of the per curiam opinion.  I respectfully

dissent from its holding in section III that summary judgment against Brentwood Glass on

its public bond claim should be affirmed because it is not entitled to a public bond claim

against the county as a matter of law and because Brentwood Glass failed to name a party

against whom it could recover.  I would hold, instead, that the circuit court erred in entering

summary judgment against Brentwood Glass on its public bond claim.  I would find that

under the terms of the contract between the county and Cornerstone, Cornerstone was a

contractor providing "construction services" to the county, and, therefore, that its contract

was subject to the requirements of section 107.170.2.[1] Additionally, I would find that Brentwood Glass should be given the opportunity, on remand, to request leave to amend its petition to name individual officials as defendants.

Section 107.170 imposes a duty on public officials to require contractors to furnish a bond "to ensure payment to those who supply labor or materials on contracts for public works and so prevent unjust enrichment." *Energy Masters Corp. v. Fulson*, 839 S.W.2d 665, 668 (Mo. App. 1992). Section 107.170.2 reads:

> It is hereby made the duty of all public entities in this state, in making contracts for public works, the cost of which is estimated to exceed twenty-five thousand dollars, to be performed for the public entity, to require every contractor for such work to furnish to the public entity, a bond with good and sufficient sureties, in an amount fixed by the public entity, and such bond, among other conditions, shall be conditioned for the payment of any and all materials, incorporated, consumed or used in connection with the construction of such work, and all insurance premiums, both for compensation, and for all other kinds of insurance, said work, and for all labor performed in such work whether by subcontractor or otherwise. [2]

A contract falls within the ambit of section 107.170.2 if: (1) a public entity (2) enters into a contract for public works (3) for a cost in excess of $25,000. Section 107.170.1(2) expressly defines a county as a "public entity," and the county's contract with Cornerstone for the construction of Six City Place was to cost more than $25,000. Additionally, section 107.170.1(3) defines "public works" as "the erection, construction, alteration, repair or improvement of any building, road, street, public utility or other public facility owned by the public entity." Because the contract between the county and

---

[1] All statutory references are to RSMo 2000 unless further indicated.

[2] Section 107.170 was amended in 2014 to increase the cost of the contract for public works to $50,000. The lower limit of $25,000 was in effect during the relevant time period in this case.

2

Cornerstone provided for Cornerstone to construct a building on property owned by the county, the contract between the county and Cornerstone falls under section 107.170.2.

When a contract falls within the ambit of section 107.170.2, the public entity must: (1) require every contractor for such work to furnish a bond (2) in an amount fixed by the public entity (3) to secure payment for materials and labor performed under the contract for public works (4) whether provided by a subcontractor or otherwise. The per curiam opinion finds that section 107.170.2 is not applicable to the contract between the county and Cornerstone because Cornerstone was not a "contractor." But section 107.170.2 references "*every* contractor," and the term "contractor" is broadly defined by section 107.170.1(1) to be "a person or business entity who provides construction services under contract to a public entity."

While "construction services" is not defined in section 107.170 or in related statutes, "[a]bsent a statutory definition, the primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *Fenix Constr. Co. v. Dir. of Revenue*, 449 S.W.3d 778, 780 (Mo. banc 2014) (internal quotations omitted). The plain and ordinary meaning of words used in a statute can be derived from the dictionary. *Circuit City Stores, Inc. v. Dir. of Revenue*, 438 S.W.3d 397, 400 (Mo. banc 2014).

The dictionary defines "construction" as "something built or erected" or "the act of putting parts together to form a complete integrated object: FABRICATION … during the [construction] of the bridge." WEBSTER'S THIRD NEW INT'L DICTIONARY UNABRIDGED 489 (1993). Similarly, "construct" is "to form, make or create by combining parts or elements: BUILD, FABRICATE . . . [construct]ing the new freeway." *Id.* "Service" is defined as

3

"the performance of work commanded or paid for by another." *Id.* at 2077. Considering these dictionary definitions together, the plain meaning of "construction services" is building or erecting something that has been commanded or paid for by another.

The contract between Cornerstone and the county expressly required Cornerstone to construct a new office building "as an agent of the County" and "on behalf of the County." As such, Cornerstone was providing work for another. By the express terms of its contract with the county, Cornerstone had the obligation to "build or erect" a completed office building. Cornerstone was, therefore, a business entity that was required to provide construction services to the county, a "public entity." As such, I would hold that Cornerstone is a "contractor" as defined by section 107.170.1 and that the circuit court's judgment against Brentwood Glass on its public bond claim should be reversed and the cause remanded.

Additionally, although I concur with the per curiam's finding that Brentwood Glass has sued the wrong party by suing the county rather than an "official, board, commission or agency of this state or any county," as required by section 107.170.1(2), I dissent from the per curiam opinion's holding that this error is fatal to Brentwood Glass' public bond claim. Because this issue was raised *sua sponte* by this Court, Brentwood Glass has not had an opportunity to seek leave to amend its petition to include different parties. *See* Rule 55.33(a). I would hold, therefore, that Brentwood Glass should be given the opportunity, on remand, to request leave to file an amended petition naming different parties. *Hargis v. JLB Corp.*, 357 S.W.3d 574, 587 n.12 (Mo. banc 2011); *see also State ex rel. Kansas City S. Ry. Co. v. Nixon*, 282 S.W.3d 363, 366 (Mo. banc 2009).

4

For these reasons, I would reverse the circuit court's judgment against Brentwood Glass on its public bond claim, as well as its mechanic's lien claim against Cornerstone, and remand the cause.

_____
PATRICIA BRECKENRIDGE, CHIEF JUSTICE



# SUPREME COURT OF MISSOURI
## en banc

BRENTWOOD GLASS COMPANY, INC., )
             )
       Appellant, )
             )
v.               )    No. SC94038
             )
PAL'S GLASS SERVICE, INC., )
             )
       Defendant, )
             )
CLAYCO, INC., CORNERSTONE VI, LLC, )
ST. LOUIS COUNTY, NATIONAL CITY BANK )
of the MIDWEST, N.A., PAUL M. MACON, )
UMB BANK, N.A., and VICTOR ZARILLI, )
             )
       Respondents. )

## OPINION CONCURRING IN PART AND DISSENTING IN PART

I concur with the holdings in sections I-A, II-A and -B, and III of the per curiam opinion. I respectfully dissent from the holding in I-B because, while Brentwood Glass may have had the legal right to perfect its mechanic's lien against Cornerstone's leasehold interest, I believe its failure to comply with section 429.080, RSMo Supp. 2005,[1] precludes Brentwood Glass from doing so.

I further dissent from the per curiam opinion's holding in section II-C, which reverses the circuit court's entry of summary judgment in the defendants' favor, finding

---

[1] All statutory references are to RSMo 2005.

there are genuine issues of material fact regarding the validity of Brentwood Glass's mechanic's lien. I do not believe Brentwood Glass demonstrated substantial compliance with section 429.080, in that its lien statement did not contain a "just and true account" of the demand due, thus, vitiating the lien. Accordingly, the defendants were entitled to judgment as a matter of law on this claim.[2]

A party seeking to enforce a mechanic's lien bears the burden of proving substantial compliance with the essential elements of the applicable statutes. *Winters Excavating, Inc. v. Wildwood Dev., L.L.C.*, 341 S.W.3d 785, 790 (Mo. App. S.D. 2011). One of the essential elements to be proven is that the lien statement contains "a just and true account of the demand due … after all just credits have been given[.]" Section 429.080. "It is generally recognized that a lien statement may be regarded as 'just and true,' so as not to vitiate the entire lien, if the inclusion of a nonlienable item is the result of honest mistake or inadvertence without intent to defraud and if the nonlienable can be separated from the lienable items." *Sears, Roebuck & Co. v. Seven Palms Motor Inn*, *Inc.*, 530 S.W.2d 695, 698-99 (Mo. banc 1975). "Arithmetic errors, errors of computation, inadvertence, or mistake in the preparation of the account, where there is no showing of the lienor's bad faith, should not defeat the lien." *Missouri Land Dev. Specialties, LLC v. Concord Excavating Co.,* 269 S.W.3d 489, 498 (Mo. App. E.D. 2008). In this case, uncontested evidence demonstrates that Brentwood Glass included nonlienable items in its lien

---

[2] I agree with the per curiam opinion's assertion that Brentwood Glass cannot maintain a mechanic's lien action against the county. Accordingly, the county is entitled to judgment as a matter of law on this claim.

2

statement that cannot be excused as matters of inadvertence, computation errors, or honest mistakes.

First, Brentwood Glass demanded payment in excess of $1 million above its contract price for "extra" work it contends it did on the project. Brentwood Glass concedes its contract with Pal's Glass required that any changes in the scope of the work that affected the price to be paid had to be documented by a change order. Brentwood Glass admits these change orders were not executed, the "extra" work was beyond the scope of the contract, and clearly the "extra" work affected the contract price. Thus, Brentwood Glass included items that were not authorized by its contract.

Second, in addition to billing for $1 million worth of work not approved by any change order, Brentwood Glass' lien statement billed its work at $70.00 per hour, despite the fact it contracted with Pal's Glass to perform the work at $62.00 per hour. Brentwood Glass admits that it inflated the hourly rate, explaining it was entitled to the reasonable value of the labor and material it furnished. Although Brentwood Glass concedes the contractual labor rate constitutes evidence of the reasonable value of the work, it claims this rate is not conclusive but does not cite any caselaw to support this proposition. Alternatively, if the contractual rate should apply, Brentwood Glass posits that asking for an increase was an "honest mistake." Brentwood Glass did not make an honest mistake by *deliberately* increasing its hourly rate as reported in the lien statement in order to compensate itself based on a new determination of the reasonableness of its work.

Finally, Brentwood Glass failed to credit Clayco for the $47,433.92 payment Clayco made to Brentwood Glass's unpaid subcontractors and material suppliers. Brentwood

3

Glass explained that it was unaware of this payment; therefore, it was yet another "honest mistake" to include this amount in its lien statement. This explanation is not persuasive. Even setting aside the issue of how to characterize the legal effect of the partial lien waivers Brentwood Glass executed throughout this project, the last lien waiver Brentwood Glass executed averred, "We also hereby acknowledge that all of our material suppliers and subcontractors have been paid in full by us and cannot claim or right to lien on the above stated project." Even if Brentwood Glass was unaware of Clayco's payment so that it was unable to give proper credit, based on its representation in the last executed partial lien waiver, none of its subcontractors or material suppliers should have been due any payment that would be entitled to a credit. Hence, the inclusion of any monies due to subcontractors and material suppliers was deliberate.

"[W]hen nonlienable items are included in a lien statement deliberately, knowingly, and intentionally," the account filed is not considered "just and true." *Putnam v. Heathman*, 367 S.W.2d 823, 829 (Mo. App. W.D. 1963). "[A]n unjust and untrue account, knowingly made, forms no basis for a lien, and no foundation for a cause of action to enforce it, but vitiates the entire right of lien." *Id*. at 828 (quoting *Gill v. Harris*, 24 S.W.2d 673, 677 (Mo. App. W.D. 1930)). Undisputed evidence demonstrates Brentwood Glass deliberately, knowingly, and intentionally included nonlienable items in its lien statement that were not a result of computation error, inadvertence or honest mistake. Thus, Brentwood Glass failed to carry its burden of proving it substantially complied with the applicable mechanic's lien statutes. I would affirm the circuit court's entry of summary judgment in defendants' favor on this claim and on all other claims.

4

_____
GEORGE W. DRAPER III, JUDGE