**R.K. MATTHEWS INVESTMENT, INC., Appellant,**

v.

**BEULAH MAE HOUSING, LLC, Respondent.**

**No. WD 74567.**

Missouri Court of Appeals, Western District.

Sept. 25, 2012.

Douglas J. Patterson and Virginia L. Brady, Leawood, KS, for appellant.

David C. Kirk, Overland Park, KS, for respondent.

Before DIV III: VICTOR C. HOWARD, Presiding Judge, KAREN KING MITCHELL, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

R.K. Matthews Investment, Inc. ("RKMI") appeals from a judgment entered following a bench trial. The judgment found in favor of Beulah Mae Housing, LLC ("BMH") on RKMI's claims for breach of contract and enforcement of mechanic's lien and for relief under the Missouri Prompt Pay Act.[1] We affirm.

### Factual and Procedural Background

Viewing the evidence in the light most favorable to the judgment, on July 9, 2009, RKMI and BMH reached an agreement to have RKMI perform foundation and other construction work on an uninhabited residence located at 2404 Red Bridge Road.

A written agreement with various attached exhibits was introduced at trial.[2] The written agreement was not

---

1. Section 431.180 RSMo. All statutory references are to RSMo 2000 as supplemented unless otherwise noted.

2. The exhibits introduced at trial, including the agreement, have not been provided to us as a part of the record on appeal. In its brief, RKMI in referencing the agreement cites to pleadings in the legal file to which the agreement was attached. However, those pleadings were not introduced as evidence at trial, and we have no way of confirming that the agreement, or any other exhibit attached to a pleading, is identical in form to the corresponding exhibit introduced at trial. "It is the appellant's burden to supply the record necessary for our review." *Wagner v. Bondex Intern., Inc.*, 368 S.W.3d 340, 357 (Mo.App. W.D.2012). " 'Where ... exhibits are not made a part of the record on appeal, such evidentiary omissions will be taken as favorable to the trial court's ruling and unfavorable to the appeal.' " *Id.* (quoting *Saturn of Tiffany*

signed by BMH. Various attachments to the agreement, including a consent of owner to mechanic's liens, a schedule for making payment, and a notification that mechanic's liens might be filed in the event of nonpayment, were signed by Lynn Stark ("Stark"), the principal of BMH. Though the agreement itself was not signed by BMH, there was no dispute that BMH intended, through its principal Stark, to enter into an agreement with RKMI to perform the work described in the written agreement.

RKMI's scope of work was described in Exhibit A to the agreement as:

1.  Repair Crack in foundation, dig around foundation install sealer, rubber blanket, and drain line.
2.  Tear out 39ftX8ftX8in wall.
3.  Garage floor
4.  Stair case with walls & drain
5.  Cut out opening for Egress window and metal door

Additional costs for engineering report

Exhibit A provided that the cost to perform this work would be $20,000.00, with one-third due on signing, one-third due after tear out, and one-third due on completion.

Exhibit B to the agreement identified the terms for payment more specifically, and required $7,600.00 to be paid on signing of the agreement, $7,000.00 to be paid after excavation, and $6,980.00 to be paid upon completion. These figures total $21,580.00, not the $20,000.00 contract amount set forth in the agreement. At trial, RKMI's principal, R.K. Matthews ("Matthews") explained that the difference between the sums was made up of

$1,500.00 for the engineering "report" anticipated in the scope of work described in Exhibit A, and an $80.00 "permit fee." Matthews claimed that the "report" was actually a set of architectural drawings prepared for the project by Joseph Zubeck ("Zubeck"). Other than Matthews's testimony, there was no evidence that BMH ever agreed to pay $1,500.00 for Zubeck's architectural drawings. Instead, the evidence indicated that BMH gave RKMI a check for $500.00 on June 25, 2009, at about the time drawings were given to BMH, and some two weeks *before* the July 9, 2009 agreement was entered into.

Exhibit A to the agreement identified Ralph Williams ("Williams"), Stark's husband, as the "customer." However, there is no dispute that the "customer" was actually BMH, and that Williams had been given the authority by Stark to act on BMH's behalf in connection with the work anticipated by the agreement.

According to Matthews's testimony at trial, BMH[3] paid RKMI $7,600.00, the first installment required by the agreement, on or about July 10, 2009.

RKMI commenced work immediately thereafter. RKMI did not, however, have a permit to commence work. RKMI could not secure the necessary permit because it did not have a license to work on residential property. Matthews did not inform Stark or Williams that neither he, nor RKMI, was licensed to work on residential property. Matthews claimed that BMH was responsible for pulling its own permit. However, Matthews also inconsistently testified that the total amount RKMI was

*Springs v. McDaris*, 331 S.W.3d 704, 712 (Mo. App. W.D.2011)).

3.  Payments made by BMH were never actually made with checks drawn on an account in BMH's name. However, the actual source of payments made to RKMI is not material to any issue in this case. Given the absence of any factual dispute that BMH intended to be bound by the agreement herein described, notwithstanding that its name does not appear on the agreement, we attribute payments made to BMH, regardless their source.

to be paid included $80.00 for the cost to secure a permit.

After starting work, Matthews told Stark and Williams that they needed to make application to pull their own permit. Stark and Williams unsuccessfully attempted to do so. Matthews then used another contractor's credentials to pull a permit for the project. This contractor obtained a permit in his name on August 13, 2009, more than a month after work on the project had commenced, but never performed any work on the project. The permit was pulled the day before the city's first scheduled inspection of the work. On August 14, 2009, foundation work performed to that date passed inspection.

Over the course of the project, two change orders were prepared. The first, dated August 14, 2009, was in the sum of $4,500.00 and added the following work:

1. Add dirt and swell change flow of water away from house
2. Drive pad 8X20 & remove and install
3. Plaster foundation wall
4. Add one step remove lose [sic] debris install new concrete
5. Haul away previous debris

The second change order, dated September 2, 2009, was in the sum of $3,550.00 and added the following work:

1. Install wall and stoop
2. 25X4 sidewalk
3. Basement 2X20 floor replacement and saw cut
4. Install pump and pit for sewer

5. Sand and finish floor 626 sq ft
6. Install 28X7 garage doors

Neither change order was signed by a representative of BMH. However, it is not disputed that Williams authorized RKMI to perform the additional work.

According to Matthews's testimony, RKMI was given its second installment check in the amount of $7,000.00 or about August 15, 2009. Matthews also testified that BMH paid two thirds of the $3,550.00 change order, $2,366.00.[4] Matthews testified that RKMI did not perform all of the work described in the September 2, 2009 change order.

Numerous issues arose about the quality of RKMI's work. Williams attempted without success to contact Matthews to address his concerns. Williams would frequently leave written notes for Matthews. On one occasion, he drove to the address he had been given for RKMI only to find that it was a private mailbox business. The disputes escalated to the point that BMH ordered RKMI off the job sometime in October 2009. On October 27, 2009, the city conducted a second inspection. The inspection noted multiple deficiencies including failure to provide a handrail on the stairs, failure to provide a guardrail at the stairs, failure to pull a plumbing permit for the plumbing work performed, failure to provide an egress door, failure to provide a window, and failure to place headers over a door. Although RKMI performed plumbing work on the project, Matthews

---

4. Williams testified at trial that he paid $3,550.00 in cash for the work anticipated by this change order. The trial court rejected this testimony as not credible and found it more credible that BMH paid a total of $1,800.00 for this change order. However, no evidence supports this conclusion. The only other evidence of payments made on the September 2, 2009 change order was the testimony of Matthews that BMH paid two thirds of the change order. In fact, Matthews specifically said he received two checks from Williams in the respective amounts of $1,183.00 for a total of $2,366.00. Though the trial court's factual finding about the amount paid by BMH toward this change order was in error, the error is of no material import to the outcome ultimately reached by the trial court, and affirmed by this Opinion.

was not licensed to perform plumbing work.

On February 26, 2010, RKMI filed a statement of mechanic's lien. The lien statement claimed that $13,255.00 was due and owing to RKMI from BMH. The following documents were attached to the lien statement: (i) the July 10, 2009 agreement and the Exhibits to the agreement herein described; (ii) an invoice in the amount of $1,500.00 from Zubeck; (iii) an invoice reflecting a rental charge for a Bobcat in the amount of $705.00; (iv) an invoice dated November 2, 2009 demanding payment from BMH in the amount of $13,255.00; and (v) a document which listed 18 items of work in summary fashion, and which calculated the $13,255.00 balance due as the difference between the total contract with change orders ($30,255.00) and the total amounts paid by BMH ($17,000.00).

On May 21, 2010, RKMI filed its Petition to Enforce Mechanics' Lien ("Petition"). Count I of the Petition sought a monetary judgment in the amount of $13,255.00 against BMH and to foreclose the mechanic's lien. Count II of the Petition sought recovery under the Missouri Prompt Pay Act.

The case was tried to the court. At trial, RKMI modified the amount of its mechanic's lien claim to $12,735.00, and sought interest and attorney's fees along with the amounts permitted under the Missouri Prompt Pay Act.

The trial court found that there "was no credible evidence" that any of the invoice related documents attached to the lien statement had been previously provided to BMH. The trial court found that the lien statement did not include an itemized statement of materials, work and charges for same, and instead listed only an aggregate sum due. The trial court found that the lien statement included no evidence of materials used or their cost, included work BMH had already paid for, included work that RKMI had not performed, and failed to account for the $500.00 payment made by BMH for the Zubeck drawings. The trial court found BMH made payments to RKMI totaling $16,900.00.[5] The trial court found that BMH's refusal to make further payments to RKMI was based on a good faith dispute over the nature and extent of the work performed, as well as over the quality of the work.

The trial court reached the conclusion that RKMI did not meet its burden to prove that it was entitled to any additional payment from BMH. The trial court reached the conclusion that RKMI's lien statement failed to comply with section 429.080 as it was not a "just and true account." The trial court also concluded that the lien statement was materially in error in several particulars demonstrating "intentional and knowing misstatements that should invalidate the lien altogether." The trial court thus rejected RKMI's claim for monetary damages and to foreclose its lien and entered judgment in favor of BMH on count I of the Petition. As a result, the relief sought in count II for recovery under the Prompt Pay Act was rendered moot, and judgment was entered by the trial court in favor of BMH accordingly.

RKMI appeals.

### Standard of Review

As this is a court-tried case, our review is under the principles articulated in *Mur-*

---

5. Matthews testified that BMH paid $7,600.00, $7,000.00, and $2,366.00 for a total of $16,966.00. The trial court found that BMH also paid $500.00 for drawings, for a total payment by BMH of $17,466.00, not $16,900.00 as found by the trial court. This discrepancy is not material to the outcome reached by the trial court, and thus does not impact our review of the case.

*phy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). *Gauzy Excavating and Grading Company v. Kersten Homes, Inc.,* 934 S.W.2d 303, 304 (Mo. banc 1996). We will affirm the trial court's judgment unless the judgment is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32. We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment. *Searcy v. Seedorff,* 8 S.W.3d 113, 116 (Mo. banc 1999). We defer to the trial court's factual findings, and review conclusions of law without deference to the trial court. *Smith ex rel. Stephan v. AF & L Ins. Co.,* 147 S.W.3d 767, 773 (Mo.App. E.D.2004).

## Analysis

RKMI raises five points on appeal. First, RKMI alleges that the trial court erred in holding that RKMI breached its contract with BMH due to the poor quality of RKMI's workmanship in that BMH offered no evidence of the cost to cure the deficient work, an essential element of BMH's defense. Second, RKMI alleges that the trial court erred in holding that RKMI failed to perform in a workmanlike manner because BMH failed to present expert testimony to support this claim. Third, RKMI alleges that the trial court erred in denying it a recovery for breach of contract merely because it found the lien statement to be invalid because the claims are independent of one another. Fourth, RKMI alleges that the trial court erred in finding that the lien statement was not a "just and true account" and in finding that shortcomings in the lien were intentional and known misstatements. Finally, RKMI alleges that the trial court erred in finding that there was not a contract between the parties concerning the project.

RKMI's first and second points on appeal address the trial court's conclusion that RKMI failed to perform its work in a good and workmanlike manner. The points allege error because of failings in proof by BMH. RKMI fails to appreciate, however, that BMH did not have the burden to prove that RKMI failed to perform its work in a good and workmanlike manner. As the party asserting a right to recover damages for nonpayment on a construction contract, RKMI bore the burden of both proof and persuasion on the subject of the quality of the performance of its work. "Plaintiff as a part of its case in an action on a building or construction contract has the burden of proving that the building was constructed in a good and workmanlike manner." *Vic Koepke Excavating & Grading Co. v. Kodner Development Co.,* 571 S.W.2d 253, 257 (Mo. banc 1978) (citing *Honig Construction Co. v. Szombathy,* 345 S.W.2d 111, 115 (Mo.1961); *Baerveldt & Honig Construction Co. v. Szombathy,* 365 Mo. 845, 289 S.W.2d 116, 120 (1956)).

The authorities cited by RKMI for the proposition that BMH had the burden to prove the cost of repair, and to prove the poor quality of workmanship through expert testimony all involve circumstances where a party has asserted an affirmative claim for recovery of damages as a result of a contractor's breach of contract or poor performance, either by way of a claim or counterclaim for breach of contract, or a claim for set off or recoupment. *See, e.g., Ullrich v. CADCO, Inc.,* 244 S.W.3d 772, 779 (Mo.App. E.D.2008) (cited by RKMI for the proposition that the burden of proving damages and the amount of damages ***rests with the party claiming breach of contract*** ) (emphasis added); *Biggerstaff v. Nance,* 769 S.W.2d 470, 473 (Mo.App. S.D.1989) (cited by RKMI for the proposition that ***a party asserting a***

*breach of implied warranty claim* involving construction must furnish proof that the work was not performed in a workmanlike manner) (emphasis added). We agree with RKMI that when a party injured by defectively performed work asserts affirmative claims for relief as a result, the burden does shift to require the injured party to prove both the poor quality of the work and the extent of damage incurred as a result. *Vic Koepke Excavating*, 571 S.W.2d at 257.

■ Here, however, BMH did not assert a claim or counterclaim for breach of contract. Nor did BMH seek set off or recoupment. BMH merely denied that RKMI had performed work for which it had not been paid. It was RKMI's burden to establish, therefore, each and every element of its breach of contract claim: the existence of a contract, the rights and obligations imposed by the contract, a breach, and damages. *Hanna v. Darr*, 154 S.W.3d 2, 5 (Mo.App. E.D.2004). In the context of construction contracts, as we have noted, proof of breach requires proof that payment was not made for work performed in a good and workmanlike manner. *Vic Koepke Excavating*, 571 S.W.2d at 257.

The trial court found that RKMI did not meet this burden. Specifically, the trial court found:

> [I]t cannot be said that [RKMI] has met its burden to show that it is entitled to any additional payment from [BMH]. Indeed the evidence established that while some of the work contracted for was completed by [RKMI] in a workmanlike manner, much of it was not. Accordingly, the Court cannot say that [RKMI] has established its performance under the terms of the agreement such that it should recover the additional amounts it seeks.

The trial court's finding is supported by substantial evidence and is not against the weight of the evidence.

Points One and Two are denied.

■ RKMI next contends that the trial court erred by rejecting its breach of contract claim merely because its mechanic's lien statement was declared defective, as the trial court failed to recognize that the claims are independent of one another. The trial court's judgment belies this contention. The finding from the judgment, cited above, reflects the trial court's independent determination that RKMI failed to sustain its burden to prove that it was entitled to any further payment on its contract. Immediately following the above referenced finding, the judgment provides:

> *Moreover*, the Court concludes that [RKMI] has failed to comply with Missouri law in that it failed to file a "just and true account" as a part of its lien statement as required by section 429.080, RSMo.

(Emphasis added.) The judgment continues with extensive discussion about the failings of the lien statement, and the conclusion that the lien statement is invalid and unenforceable. It is obvious that the trial court independently considered and rejected RKMI's claims for contract damages and for enforcement of its mechanic's lien statement.

Point Three is denied.

For its fourth point, RKMI alleges that the trial court erred in finding that the lien statement was not a "just and true account" and in finding that shortcomings in the lien were intentional and known misstatements. In the argument portion of its brief, RKMI addresses only two subjects: (i) that its inclusion of $600 in the lien amount for garage doors and a sump pump that were not installed by RKMI was "inadvertent," and (ii) its view that an itemized statement is not required to be attached to a mechanic's lien statement by a general contractor. We address the second argument first.

RKMI does not contest the trial court's factual finding that the lien statement "did not include an itemized statement of materials, work and charges for same." RKMI does contest the trial court's legal conclusion that as a result, the lien statement was not a "just and true account" as required by section 429.080. Section 429.080 provides, in pertinent part:

It shall be the duty of every original contractor, every journeyman and day laborer, ... and every other person seeking to obtain the benefit of the provisions of sections 429.010 to 429.340, within six months after the indebtedness shall have accrued, ... to file with the clerk of the circuit court of the proper county *a just and true account of the demand due him or them after all just credits have been given,* which is to be a lien upon such building or other improvements, and a true description of the property, or so near as to identify the same, upon which the lien is intended to apply....

(Emphasis added.) The statute requires a lien statement to provide a property owner with sufficient information to investigate whether the material and labor described in the lien has actually been used to improve the property and whether the amount charged is reasonable and proper. *Commercial Openings, Inc. v. Mathews,* 819 S.W.2d 347, 349 (Mo. banc 1991). In practice, the statute imposes distinct requirements depending on a claimant's status as a general contractor or a subcontractor. " 'An 'original' [general] contractor may make a 'just and true account' if his lien statement simply states his account in a lump sum, without itemization.' " *Id.* at 350 (quoting *Grgic v. Cochran,* 740 S.W.2d 358, 360 (Mo.App. E.D.1987)). "A subcontractor, on the other hand, must 'include in his lien account an itemized statement of the labor and materials furnished.' " *Id.* (quoting *Mississippi Woodworking Co. v. Maher,* 273

S.W.2d 753, 756 (Mo.App.1954)). The rationale for the distinction is grounded in the fact that the property owner deals directly with a general contractor, and is thus deemed to know what materials and labor were provided to benefit the property. *Id.*

We thus agree with RKMI that the trial court erroneously indicted the lien statement for its failure to include an itemized statement of material and labor provided as it is uncontested the RKMI contracted directly with BMH and was a general contractor. We do not, however, conclude that as a result, the trial court erroneously held that the lien statement failed to qualify as a "just and true account." There were several other defects in the lien relied upon by the trial court to support this conclusion, none of which are contested by RKMI on appeal. These defects include: (i) the trial court's finding that "the lien statement includes charges for items for which it was undisputed [RKMI] had already received payment, such as the engineer's fee, and for work that was never performed;" (ii) the trial court's finding that the lien statement claimed payment for work that had not been satisfactorily performed and that had not passed inspection; and (iii) the trial court's finding that "[t]he work performed by [RKMI], including the staircase, did not pass inspection. Much of that work needed to be torn out and redone. The window and door work was not completed. Matthews testified that most of the work on the September 2, 2009 change order was not done."

In short, the trial court's conclusion that the lien statement was not a "just and true account" involved findings uncontested on appeal and quite independent of the erroneous conclusion that the lien statement should have attached an itemized statement of labor and materials provided. Be-

cause RKMI has not contested the sufficiency of the additional findings to support the trial court's conclusion that the lien statement was not a "just and true account," the trial court's error in partially relying on the absence of an itemized statement to reach this conclusion is harmless.

■ RKMI's other argument contests the trial court's conclusion that its errors in the lien statement were not in good faith because its inclusion of $600 in the lien amount for garage doors and a sump pump was "inadvertent." RKMI ignores that the trial court found collective "omissions and errors" which permitted the trial court to determine "from the evidence as a whole that the lien statement's shortcomings are the type that demonstrate intentional and knowing misstatements that should invalidate the lien altogether." These collective omissions and errors included: the inclusion of $600 in the lien amount for garage doors and a sump pump when that work was not performed by RKMI; inclusion of the entirety of the $3,550.00 September 2, 2009 change order in the lien amount when "Matthews testified that most of the work on [that change order] was not done"; inclusion of window and door work that was not completed; inclusion of the $1,500.00 bill for Zubeck's architectural drawings with no evidence that BMH had ever agreed to that charge, and with no credit given for the $500.00 paid by BMH for the drawings; and the inclusion of work that did not pass inspection and had to be torn out and redone.

■ It is true that the inclusion of non-lienable items in a lien statement, and the presence of mistakes and errors in a lien statement, do not require the conclusion that a lien statement was prepared with the deliberate intent to defraud. "A lien statement may be regarded as just and true if it contains mistakes or errors of omission, as long as those inaccuracies are unintentional and are the result of honest inadvertence, accident, or oversight, and do not result from deliberate intention or design." *Dave Kolb Grading, Inc. v. Lieberman Corp.,* 837 S.W.2d 924, 933 (Mo.App. E.D.1992). And "[a] lien statement may be regarded as 'just and true, so as not to vitiate the entire lien, if the inclusion of a nonlienable item is the result of honest mistake or inadvertence without intention to defraud *and if the nonlienable [item] can be separated from the lienable items.'* " *Missouri Land Development Specialties, LLC v. Concord Excavating Co.,* 269 S.W.3d 489, 499 (Mo. App. E.D.2008) (quoting *Sears, Roebuck & Co. v. Seven Palms Motor Inn, Inc.,* 530 S.W.2d 695, 698–99 (Mo. banc 1975) (emphasis added)).

Here, nothing in the lien statement or in the other evidence permitted the trial court to easily separate the nonlienable items (work not performed, or performed so poorly as to have not been of benefit to the property) from the lienable items, as the work to be performed was loosely described in the agreement and in the first and second change orders. Moreover, the trial court was in the best position to assess Matthews's credibility, and thus to determine whether his inclusion of nonlienable items in RKMI's lien statement was inadvertent or deliberate. Rule 84.13(d)(2) (requiring us to afford due regard to the trial court's superior position to assess the credibility of witnesses). In this regard, the trial court may well have been influenced by the evidence that RKMI undertook to perform the work for BMH without the proper licenses, with no independent ability to secure required permits as a result, and without telling BMH that it could not secure permits. The trial court may also have been influenced by evidence that Matthews became difficult to reach as disputes about the quality of RKMI's work became more prevalent.

We conclude that the trial court's determination that RKMI's mechanic's lien statement was intentionally and knowingly erroneous, and was thus invalid and unenforceable, is supported by substantial evidence and is not against the weight of the evidence.

■■■■ In any event, even were we to conclude (which we do not) that the trial court erroneously declared the lien statement to be invalid, RKMI could not prevail on its claim to foreclose its mechanic's lien. The trial court determined independent of the lien's validity that RKMI failed to sustain its burden to prove that it was entitled to any further payment from BMH. It is axiomatic that a mechanic's lien will not be imposed on property if the lien claimant fails to establish that it is entitled to payment. "Our lien statutes are based on and justified by the principle that those who have contributed labor or material to the improvement of property are entitled to look to the property *for compensation.*" *Putnam v. Heathman*, 367 S.W.2d 823, 828 (Mo.App.1963) (emphasis added). If no compensation is owed, there is no right to look to property for payment via the imposition of a lien.

Point Four is denied.

Finally, for its fifth point, RKMI claims the trial court erred because it erroneously concluded that RKMI and BMH did not have a contract. We have parsed the trial court's judgment in an unavailing effort to locate this supposed finding. It does not exist. To the contrary, the trial court found that RKMI's action "arises out of a July 9, 2009 agreement" between RKMI and BMH. Though the trial court noted that the agreement was not signed by BMH, the trial court nonetheless found that Stark testified that it was her intention to enter into the agreement. The trial court later observed in its judgment that "[a]fter the original agreement was executed," BMH authorized additional work as described in two written, but unsigned change orders. It is evident the trial court afforded RKMI the benefit of a conclusion that RKMI and BMH entered into a contract, the terms of which were set forth in the agreement, its initial attachments, and the two change orders.

Point five is denied.

## Conclusion

The trial court's judgment is affirmed.

All concur.