

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| RAND CONSTRUCTION COMPANY, | ) |
| | ) |
| Appellant-Respondent, | ) |
| | ) |
| v. | ) WD84933 |
| | ) Consolidated with WD84959 |
| CARAVAN INGREDIENTS, INC., | ) Opinion filed: December 13, 2022 |
| D/B/A CORBION F/K/A CJ | ) |
| PATTERSON COMPANY, | ) |
| | ) |
| Respondent-Appellant. | ) |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
THE HONORABE KEVIN D. HARRELL, JUDGE**

Division One:  W. Douglas Thomson, Presiding Judge,
Alok Ahuja, Judge and Edward R. Ardini, Jr., Judge

Rand Construction Company ("Rand") appeals the trial court's judgment denying it relief for its claims for enforcement of a mechanic's lien (Count I), breach of contract (Count II), action on account (Count III), and quantum meruit (Count IV) against Caravan Ingredients, Inc. ("Corbion").  Rand brought suit against Corbion, claiming Corbion owed it additional compensation on a construction contract (the "Contract").  Rand brings nine points on appeal, claiming that the trial court erred in finding: (1) Rand was not entitled to relief on its claim to enforce its mechanic's lien; (2) Rand was not entitled to relief on its claim for breach of contract; (3) that Rand is

prohibited from recovering under Section 4.5 of the Contract; (4) that Rand failed to provide Corbion with detailed information concerning scope change requests as required by the Contract; (5) that Rand failed to provide Corbion with notice of its claim for additional labor hours until four months after Rand was aware of its claims in violation of the Contract; (6) that Rand's calculations of damages were "too speculative;" (7) that Rand used the "total cost method" to calculate its damages; (8) that the full Contract included an "Appendix E;" and (9) that Rand had a contractual obligation to provide Corbion with detailed schedules of its work.

Corbion brings a cross-appeal, arguing that the trial court erred in not awarding it attorney's fees and costs because it is the "prevailing party."

We affirm in part, and reverse and remand in part for further proceedings consistent with this opinion.

### Statement of Facts[1]

**Factual Background**

Rand is an industrial and processing mechanical contractor located in Kansas City, Missouri. Corbion is an international corporation based in the Netherlands that owns a food product manufacturing facility in Grandview, Missouri ("Grandview facility").

The dispute in the case centers around a construction contract involving a complex, technical piping system project the parties called Project Hercules (the

---

[1] In a court tried case, we view "the facts in the light most favorable to the trial court's judgment." *Tenampa, Inc. v. Bernard*, 616 S.W.3d 327, 330 n.4 (Mo. App. W.D. 2020) (internal citations and quotations omitted).

2

"Project"). Corbion solicited bids from four mechanical contractors for the Project, including Rand. Rand and Corbion had worked together previously and were familiar with each other's business practices. Rand bid the Project for $2,900,000 with an anticipated 15-person crew working a 40-hour work week through completion in February 2016. Rand was awarded the bid and began work on the Project on July 20, 2015.

The construction contract (the "Contract") for the Project included Corbion's Purchase Order, Corbion's Master Services Agreement, and various plans and specifications for the Project. Corbion drafted the contract and sent it to Rand via email on August 21, 2015. The email included a Dropbox link where all of the Contract documents were saved. The Contract included an "Appendix E," which set forth certain requirements regarding scheduling. Although the Contract specified a fixed price for performance of the scope of work specified in the base contract, the Contract also included a "time and materials" provision that stated, "Any other scope changes requiring additional labor are to be charged according to the [time and materials] bill rates." Rand provided the time and materials billing rates to Corbion and those rates were incorporated into the Contract.

Central to this appeal is the process Rand and Corbion used to identify and implement changes to the Project. Change orders on the Project were frequent. Rand's standard form for change orders was a scope change request ("Scope Change"), while Corbion and the contract called them Variance Order Requests ("VOR"). The

VOR form provided Corbion much more detail about the changes than Rand's Scope Change form.[2]

Once a needed change was identified, Rand's project manager provided Corbion's project manager with a change order request outlining the work needed to implement the change and costs associated with that change. Rand's change order request then had to receive approval from Corbion's Steering Committee, made up of Corbion executive staff. Once requested scope changes were approved by the Steering Committee, Rand could begin the change order work.

In November 2015, Rand presented Corbion with a number of change order requests consisting primarily of work that Rand had already performed on the Project. These were submitted on Rand's Scope Change request form, and not Corbion's VOR form, as required by the Contract. After receiving those change order requests, Corbion requested that Rand timely submit each change order request with pricing and detailed supporting data for approval before performing the work per the VOR form request process contained in the Contract, which included using Corbion's VOR form.

The VOR form required Rand to provide information regarding pricing and the data supporting Rand's pricing calculations. Rand claims that these pricing calculations were estimates, not actual costs to perform the change order work. Rand tracked their change order requests through a Change Order Request Log ("COR

---

[2] For ease, we refer to any changes made to the original Contract work as a "change order" unless the difference between one form and the other is the issue, at which time we will refer to them as the Scope Change or VOR form, as the case may be.

4

Log"). For billing purposes, Rand used the approved pricing from Corbion's VOR form to bill Corbion for change order work. With each monthly invoice, Rand issued Corbion a "Waiver & Release of Lien" that waived any claims for additional compensation for work described in the invoice once the invoice was paid. These lien waivers do not include releases for any overtime or lost productivity.

For various reasons, Corbion issued a number of change orders that caused Rand numerous work flow disruptions. There were 187 changes to Rand's work on the Project. 136 of those 187 changes were made during the final three months of the Project. Due to those scope changes, Corbion granted Rand's request to extend the Project by five weeks.

In January 2016, Corbion's project manager told Rand's project manager that Rand was behind schedule and needed to take corrective action to stay on track with the schedule Rand provided to Corbion. In February 2016, Rand, for the first time, asserted claims for what they then termed as "indirect costs and lost productivity" damages due to the numerous change order requests on the Project, despite knowing as early as October 2015 that it may have a claim to these damages.

The Contract was originally set to be completed on February 19, 2016. Rand last performed work on the Project for Corbion on approximately May 10, 2016. On May 26, 2016, Rand issued Corbion an invoice for $178,265.28 with a lien release and waiver that stated that all of the change order work was "100%" complete. Rand never provided, nor did Corbion request, a final lien waiver. Corbion paid this and every other invoice received.

5

**Procedural History**

On September 12, 2016, Rand timely filed a Statement of Claim of Mechanic's Lien, stating it is entitled to $875,033.85 for "labor, materials, equipment, and services."[3] Rand asserted that the monthly invoices it sent Corbion included only partial payments for its *estimates* on the change order work, not actual costs, and that its mechanic's lien was for the "actual time and materials" it expended on the change order work over and above the alleged partial payments previously invoiced. On March 9, 2017, Rand filed a Petition to Enforce Mechanic's Lien in Jackson County, Missouri. Rand filed an Amended Petition on June 20, 2018 with several claims: enforcement of a mechanic's lien (Count I), breach of contract (Count II), action on account (Count III), and quantum meruit (Count IV).

The trial court held a four-day bench trial on February 1-4, 2021. The trial court entered its Judgment on July 16, 2021. The trial court determined that Rand was "not entitled to additional compensation from Defendant Corbion on its claims for enforcement of mechanic's lien, breach of contract, quantum meruit, and action

---

[3] Rand's claim for damages centers around its assertion that it was not paid pursuant to the "time and materials" clause of the contract for its "actual time and materials" costs incurred due to the Project's change orders. Rand presented evidence that it calculated its "indirect costs and loss of productivity" claim relating to change order work as follows: $56,814 in additional supervisor hours; $56,510.40 on overtime between November 2015 and February 2016; $15,391 for additional time for a site safety representative; $5,600.12 on site overhead during the five-week extension Rand sought from Corbion, and; $24,293.79 for rental equipment. Rand also presented evidence of "cost impacts due to productivity loss/inefficiencies" that concluded Rand had spent an additional 7,566 labor hours completing the contract and was owed an additional $716,424.54 in labor. In total, Rand claimed it suffered $875,033.85 in damages.

6

[on] account."[4]  The trial court found that (1) both Rand and Corbion were bound by the scheduling and reporting requirements in Appendix E, which was incorporated into the contract; (2) Rand failed to timely notify Corbion of its claims for indirect costs, lost productivity, and other scheduling impact damages as required by the Contract; and (3) Rand failed to establish its entitlement to any additional damages for additional labor hours or costs associated with the Project.  The trial court ordered both parties to bear their own costs and pay their own attorney's fees.

Rand timely filed a motion to modify the Judgment, which the trial court denied.  Thereafter, Rand filed a notice of appeal.  Corbion filed a notice of cross-appeal.  Both appeals have been consolidated into this case.

## Discussion

Rand brings nine points on appeal.[5]  In its first point, Rand argues that the trial court erred in concluding that Rand was not entitled to judgment on its claim

---

[4] The trial court's denial of relief on Rand's claims for quantum meruit and action on account are not at issue in this appeal.

[5] All nine of Rand's points state three separate and distinct standards for court-tried cases: unsupported by substantial evidence, against the weight of the evidence, and erroneously declares and applies the law.  Rand correctly identifies these standards as applicable to court tried cases but does not identify which of the three standards it is using to challenge the trial court's judgment. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).  "In order to comply with the rules of appellate procedure in Rule 84.04, a point on appeal must proceed under *one* of the *Murphy v. Carron* grounds, each of which requires a distinct analytical framework." *Ebert v. Ebert*, 627 S.W.3d 571, 580 (Mo. App. E.D. 2021) (emphasis in the original).  "If a point on appeal fails to identify which of the *Murphy v. Carron* grounds applies, Rule 84.04 directs us to dismiss the point." *Id.*

However, we prefer to decide cases on the merits where we can readily ascertain the party's arguments without acting as an advocate for that party. *See, e.g., State v. Clark*, 503 S.W.3d 235, 237 (Mo. App. W.D. 2016).  Bearing this in mind, we are addressing Rand's case on the merits for two reasons.  First, we can discern that several of Rand's points address the issue of damages, which is an essential element to both causes of action Rand appeals (breach of contract and enforcement of a mechanic's lien), and proof of damages is dispositive in this case.  Second, each of Rand's points regarding damages contain a subsection titled "Erroneous Conclusions of Law" that, although in conflict with Rand's stated Points Relied On, states a single *Murphy* standard.  Thus, we proceed to review Rand's points as to damages using the "erroneous conclusions of law" standard.

for enforcement of its mechanic's lien. Similarly, in its second point, Rand argues that the trial court erred in concluding that Rand was not entitled to judgment on its claim for breach of contract. The rest of Rand's points can be divided into two categories: Rand's arguments as to what the Contract stated and the obligations it imposed on Rand (Points III, IV, V, VIII, and IX),[6] and Rand's argument relating to its calculation and proof of damages (Points VI and VII).

As we explain below, whether Rand properly proved that it suffered damages is dispositive in the case. Accordingly, we address Points II, IV, and VII together and Point I separately. Because the issue of damages is dispositive, Rand's remaining points become moot and are not addressed.

Corbion brings one point on cross-appeal, arguing that the trial court erred in denying it an award of attorney's fees because it is the "prevailing party" pursuant to the Contract.

The parties agree that the Contract is governed by Kansas law, and thus Kansas law applies to all substantive claims relating to the Contract: Rand's Points II through IX and Corbion's single point on cross-appeal.[7] Rand's first point,

---

[6] Point III argues that the trial court erred in concluding that Rand is prohibited from recovering under Section 4.5 of the Contract because the Contract did not impose any obligations on Rand that would bar its recovery. Point IV alleges that the trial court erred in determining that Rand was prohibited from recovering because Rand failed to provide Corbion with detailed information concerning its change order requests. Point V challenges the trial court's conclusion that Rand is barred from recovering for certain additional labor hours because Rand did not timely notify Corbion of its claims. In Point VIII, Rand argues that the trial court erred in concluding the Contract included an Appendix E. In Point IX, Rand asserts that the trial court erred in concluding that Rand had a contractual obligation to provide Corbion with detailed schedules of their work.

[7] Section 17.10 of the Contract states all disputes over the interpretation of the Contract will be governed by the "laws of the state of Kansas." Parties may choose which state law shall govern interpretation of their contractual rights and duties. *Peoples Bank v. Carter*, 132 S.W.3d 302, 304 (Mo. App. W.D. 2004). The parties' choice of law provision applies only to substantive law; on procedural questions, Missouri law will govern. *Id.* at 304-05.

8

regarding the procedural enforcement of its mechanic's lien, is brought pursuant to Missouri's mechanic lien statute.

We address Rand's claims first, beginning with its claims relating to its breach of contract. We next address Rand's claims associated with its action to enforce its mechanic's lien. We lastly address Corbion's cross-appeal for attorney's fees and costs.

## Rand's Appeal

### Standard of Review

We review a court tried case for whether the judgment is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares and applies the law. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We review claims that the trial court misapplied the law de novo. *Smith v. Great American Assur. Co.*, 436 S.W.3d 700, 704 n.3 (Mo. App. S.D. 2014).

Rand's briefing includes an "Erroneous Conclusions of Law" section in the points we address, leading us to apply a de novo standard to Rand's claims.

### Rand's Claims for Damages (Points II, VI, and VII)

Points II, VI, and VII address the trial court's rulings concerning Rand's proof of damages. Because each of these points address damages, an essential element of Rand's breach of contract claim, we address them together. First, in Rand's second point on appeal, Rand argues that the trial court erred in denying Rand relief as to Count II because Rand satisfied all elements of its breach of contract claim, including damages. In Rand's sixth point, it alleges that the trial court erred in concluding that

9

its damages calculations were "too speculative." Finally, in its seventh point, Rand argues that the trial court erred in determining that Rand's damages were calculated using the "total cost method."

Damages is an essential element to a breach of contract claim in Kansas. *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013). "The basic principle of contract damages is to make a party whole by putting it in as good a position as the party would have been had the contract been performed." *State ex rel. Stovall v. Reliance Ins. Co.*, 107 P.3d 1219, 1228 (Kan. 2005). A party must demonstrate both a breach of contract and resulting damages, and "there [must] be a reasonable basis for computation of damages." *Id.* "A party is not entitled to recover damages 'not the proximate result of the breach of contract and those which are remote, contingent, and speculative in character.'" *Id.* (quoting *Apperson v. Security State Bank*, 528 P.2d 1211, 1212 (Kan. 1974)). "One who claims damages on account of a breach of contract must not only show the injury sustained, but must also show with *reasonable certainty* the amount of damage suffered as a result of the injury or breach." *Venable v. Import Volkswagen, Inc.*, 519 P.2d 667, 674 (Kan. 1974) (emphasis added).

Rand divides its claim for damages into two categories: "cost impacts due to productivity loss/inefficiencies" and "cost impacts due to schedule."[8] At issue in this case is whether Rand used a type of calculation called the "total cost method" to calculate its "productivity loss/inefficiencies" damages, and, if so, whether the total

---

[8] Despite this labeling, Rand argued at trial that these damages calculations reflect its "actual time and materials" incurred due to the scope change work.

10

cost method satisfies Kansas' requirement that damages be proven with "reasonable certainty."

Kansas law does not specifically address the usefulness of the "total cost method" in calculating damages in construction cases. However, other jurisdictions, including Missouri, express skepticism with the total cost method:

> The [total cost method] allows a contractor to calculate his damages by subtracting his amount bid (or the 'contract price') from the total cost he incurred to fulfill its contractual obligations. *Sunshine Constr. & Eng'g, Inc. v. United States*, 64 Fed.Cl. 346, 371 (2005). This approach presumes that the breaching party is the *sole and exclusive* cause of the non-breaching party's damages, even though the additional costs incurred by the contractor could have actually been caused or contributed to by a myriad of factors. *See Cavalier Clothes, Inc. v. United States*, 51 Fed.Cl. 399, 417–18 (2001). Effectively, the [total cost method] is an all-or-nothing approach, and on some occasions it would allow a plaintiff to recover damages—even damages he is partially at fault for causing—beyond what was anticipated when the parties entered into the contract.

*Penzel Const. Co. v. Jackson R-2 Sch. Dist.*, 544 S.W.3d 214, 234 (Mo. App. E.D. 2017) (emphasis in the original); *see also Youngsdale & Sons Const. Co. v. United States*, 27 Fed.Cl. 516, 541 (1993) ("Use of [the total cost] method is highly disfavored by the courts, because it blandly *assumes*—that every penney [sic] of the plaintiff's costs are *prima facie* reasonable, that the bid was accurately and reasonably computed, and that the plaintiff is not responsible for any increases in cost.") (emphasis in original).

We find a comparison between Missouri and Kansas law persuasive in guiding our decision because both states require damages to be proved with "reasonable certainty." *See, e.g.*, *Venable*, 519 P.2d at 674; *Penzel Const. Co.*, 544 S.W.3d at 234. In that regard, persuasive case law indicates the total cost method and its "all-or-nothing" approach lacks the specificity to prove damages with reasonable certainty.

Additionally, both states have a policy that an award of damages should make the non-breaching party whole without resulting in a windfall, which the total cost method is prone to do. *See, Stovall*, 107 P.3d at 1228; *Penzel Const. Co.*, 544 S.W.3d at 234.

Rand presented evidence at trial that it suffered $716,424.54 in "productivity loss/inefficiencies" damages, which the trial court determined was calculated using the total cost method. Rand alleges that Corbion still owes it payment for 7,566 additional labor hours at the billing rate of $94.69 per hour, and that each of the monthly invoices it sent to Corbion contained only estimates for change order work and not the actual time and materials it used to complete change order work.

The trial court found Rand calculated its claim for "productivity loss/inefficiencies" by:

> Adding its alleged "Original Man-Hours" for base scope work and "COR/VO" [change order request/variance order] hours for changes on the Project (17,560 + 9,937 = 27,497);
> Subtracting that amount from its actual "Total hours" on the Project (35,063 – 27,497 = 7,566); and
> Multiplying those hours [the difference] by its T&M [time and materials] billing rate for pipefitters (7,566 * $94.69 = $716,424.54).

Essentially, Rand adds all original Contract hours to all change order hours, and deducts that sum from all hours they allegedly incurred in the entire project, the difference resulting in the hours they allege remain unpaid.

Rand explicitly denies that it used the total cost method to calculate damages.[9] Rand argues that the total cost method requires "a lump-sum contract for *original*

---

[9] Despite this denial, Rand also argues that its calculations are calculated using the modified total cost method, which is an accepted method of calculating damages in Missouri. Even if true, such

12

scope work based upon a lump-sum bid, and a subsequent cost to actually perform the *original* scope work which exceeds the value of the lump-sum contract." (emphasis in the original). Rand asserts that change orders are not contemplated when determining whether the total cost method was used, it only contemplates work under the original Contract. Rand provides no authority for such assertion.

We need not decide whether Rand's calculations fall squarely under the total cost method, because Rand's calculations suffer from the same defect courts note about the total cost method, and under Kansas law, are too speculative to meet the reasonable certainty requirement. Rand's calculation of its damages relating to "productivity loss/inefficiencies" use its bid for labor hours plus the hours it billed for change order work, subtracting that sum from the total hours it actually spent on the project. Such a calculation necessarily presumes Rand's bid proposal was reasonable, and Corbion was the sole and exclusive cause for the additional labor hours. However, these two presumptions are the very factors that courts have pointed out make the total cost method problematic as a measurement of damages. *See Penzel Const. Co.*, 544 S.W.3d at 234; *Youngsdale & Sons Const. Co.*, 27 Fed.Cl. at 541.

These presumptions are not the only flaw in Rand's calculation. Rand also failed to present evidence that clearly separates hours Rand spent on the original work versus hours Rand spent on change order work. The only evidence Rand

an argument is irrelevant in this case, as both parties acknowledge that Kansas law applies to Rand's breach of contract claim, and thus its calculation of damages. Rand cites no Kansas case, nor have we identified one, discussing whether the modified total cost method is an appropriate measure of damages in Kansas. In any event, although Rand claims that its evidence justified application of the modified total cost method, it makes only a conclusory statement to that effect in its opening brief, with no citation to relevant evidence in the record.

provided showing that it spent a total of 35,063 hours on the project is a "job cost detail report" that lists the name of the employee, the employee's job title, the date the employee worked, and the number of hours they worked. This total timesheet does not describe the work performed or whether that work was attributed to original contract work or change order work. Therefore, Rand did not submit evidence reflecting when its original base work stopped and when each additional change order work started. Rand also failed to submit evidence showing how many hours were spent completing each change order over and above what it invoiced Corbion for each month.

Further, Rand is also requesting compensation for what it calls "rejected scope change work;" that is, change order work that Rand sought permission to perform and Corbion *expressly rejected*. Corbion is clearly not responsible for costs Rand incurred in completing work that Corbion never approved. Rand's inclusion of work that Corbion expressly rejected means they have not proven that Corbion is *solely* responsible for each additional labor hour for which they seek compensation. Further, as the trial court noted, Rand's reliance on lump sum hours means we cannot know whether Rand spent additional labor hours on change order work that Rand told Corbion would not change costs when Rand sought approval to perform such work. Clearly, Rand's lumping together of all labor hours provided no specificity by which the trial court could determine damages with reasonable certainty. [10]

---

[10] Rand also presented the testimony of a lost productivity expert, Michael Callahan, in support of its claim for additional labor hours. The trial court found Callahan's testimony "to be lacking, without substance, of no assistance to the court, and void." We do not question the trial court's witness credibility determinations on appeal and thus do not consider Callahan's testimony. *See Essex*

14

Rand also argued at trial that it suffered "cost impacts due to schedule," which included additional supervisor hours, overtime, site safety representatives, site overhead, and rental equipment costs. These damages are also too speculative to meet Kansas' reasonable certainty standard. Rand's claim for these additional costs, like Rand's claims for additional compensation for labor hours, lacks any documentation linking these additional costs to any change orders, as opposed to being a result of the initial work contemplated by the Contract. Additionally, Rand's claim for overtime includes overtime hours Corbion was not aware of and did not agree to pay. Rand cannot now claim it incurred damage by paying overtime that it never requested Corbion to authorize, such authorization being a requirement under the Contract. Without any evidence linking these costs with specific change orders, Rand fails to prove its damages with reasonable certainty as required by Kansas law.

Ultimately, whether Rand had presented sufficient credible evidence to prove damages attributable to its performance of approved change order work presents a factual question for the fact-finder to decide. It is evident from the trial court's judgment that it found Rand's damages evidence to be speculative, vague, and insufficiently persuasive to prove its damages with reasonable certainty. We will generally not second guess a fact-finder's rejection of evidence offered by the party with the burden of proof:

---

*Contracting, Inc. v. Jefferson Cty.,* 277 S.W.3d 647, 652 (Mo. banc 2009) (stating, "[o]n appeal of a court-tried case, the appellate court defers to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and persons directly, but also their sincerity and character and other trial intangibles which may not be completed revealed by the record.") (internal citations and quotations omitted).

"When the burden of proof is placed on a party for a claim that is denied, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence. If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party. Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it. *Consequently, substantial evidence supporting a judgment against the party with the burden of proof is not required or necessary.*"

*Davis v. Davis*, 582 S.W.3d 100, 109 (Mo. App. W.D. 2019) (quoting *Adoption of K.M.W.*, 516 S.W.3d 375, 382 (Mo. App. S.D. 2017)) (emphasis added); *Maly Commercial Realty, Inc. v. Maher*, 582 S.W.3d 905, 911 (Mo. App. W.D. 2019).

As such, we agree with the trial court that Rand's calculations of damages are too speculative and without reasonable certainty as required by Kansas law. Rand's damages calculations lack supporting documentation and thus are speculative in nature. Further, because Rand fails to prove it was damaged, its breach of contract claim fails. Rand's Points II, VI, and VII are denied.

**Rand's Point I**

We next address Rand's claim for enforcement of a mechanic's lien. Rand argues that the trial court erred in concluding that Rand was not entitled to relief as to Count I (enforcement of mechanic's lien) because Rand satisfied all conditions precedent and elements of its mechanic's lien.[11]

In Missouri, mechanic's liens are governed by Sections 429.010 through 429.360.[12] "A mechanic's lien is an equitable remedy with 'the purpose of giving security to mechanics and material[men] for labor and materials furnished in

---

[11] The parties and the trial court agree that Missouri law applies to Rand's Count I.
[12] All statutory references are to RSMo 2016, as updated by supplement unless otherwise indicated.

16

improving the owner's property.'" *Brentwood Glass Co. v. Pal's Glass Serv., Inc.*, 499 S.W.3d 296, 300 (Mo. banc 2016) (quoting *Bob DeGeorge Assocs., Inc. v. Hawthorne Bank*, 377 S.W.3d 592, 598 (Mo. banc 2012)). The parties agree that Rand satisfied the timeliness requirements of the mechanic's lien statute. At issue is whether Rand properly provided a "just and true account" of its lien and whether Rand has properly proved its lien.

Section 429.080 requires every original contractor to file "a just and true account of the demand due to him or them after all just credits have been given…." The just and true account must "provide a property owner with sufficient information to investigate whether the material and labor described in the lien has actually been used to improve the property and whether the amount charged is reasonable and proper." *R.K. Matthews Inv., Inc. v. Beulah Mae Housing, LLC*, 379 S.W.3d 890, 898 (Mo. App. W.D. 2012) (citing *Commercial Openings, Inc. v. Mathews*, 819 S.W.2d 347, 349 (Mo. banc 1991)).

A just and true account of a mechanic's lien should only include lienable amounts; that is, amounts for work or labor actually performed. *See* Section 429.010, RSMo.; *Mo. Land Dev. Specialties, LLC v. Concord Excavating Co.*, 269 S.W.3d 489, 498-99 (Mo. App. E.D. 2008). "A lien statement may be regarded as 'just and true,' so as not to vitiate the entire lien…if the nonlienable [items] can be separated from the lienable items.'" *Mo. Land Dev. Specialties, LLC*, 269 S.W.3d at 499 (quoting *Sears, Roebuck & Co. v. Seven Palms Motor Inn, Inc.*, 530 S.W.2d 695, 698-99 (Mo. banc 1975)). "It is axiomatic that a mechanic's lien will not be imposed on a property

17

if the lien claimant fails to establish that it is entitled to payment." *R.K. Matthews Inv., Inc.*, 379 S.W.3d at 900. If a trial court determines independent of a mechanic's lien's validity that a plaintiff has failed to sustain its burden to prove that it is entitled to any additional payment from the defendant, then the plaintiff's mechanic's lien necessarily fails. *Id.*

Rand's claim for enforcement of its mechanic's lien fails for the same reason its breach of contract claim fails: Rand has failed to prove it is entitled to additional payments from Corbion. As we explain above, Rand's claim for additional compensation for labor hours does not separate labor hours completed on the original contract work versus labor hours attributable solely to change orders. Further, Rand's calculations include work Rand performed on change order work that was not approved by Corbion, for work Rand told Corbion would not result in additional costs, and for overtime Rand did not seek authorization from Corbion before incurring as required by the Contract. Rand's evidence did not separate out any portion of the work done such that Corbion, the property owner, had "sufficient information to investigate whether the material and labor described in the lien has actually been used to improve the property and whether the amount charged is reasonable and proper." *R.K. Matthews Inv., Inc.*, 379 S.W.3d at 898. In total, Rand has failed to prove it is entitled to any additional payments from Corbion.

Point I is denied.

18

Because Rand failed to prove damages, a necessary element of both its claims for breach of contract and enforcement of mechanic's lien, Points I, II, VI, and VII are denied and the trial court's judgment is affirmed.[13]

## Corbion's Cross-Appeal

**Standard of Review**

To successfully challenge a trial court's award of attorney's fees on appeal in Missouri, a party must show that the award is an abuse of discretion. *Cullison v. Thiessen*, 51 S.W.3d 508, 513 (Mo. App. W.D. 2001). "An abuse of discretion is demonstrated by showing that the award is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.*

In Missouri, a trial court abuses its discretion if it does not award attorney's fees when a contract expressly permits the payment of attorney's fees. "If a contract provides [for] the payment of attorney fees and expenses incurred in the enforcement of a contract provision, the trial court must comply with the terms of the contract and award them to the prevailing party." *Magruder v. Pauley*, 411 S.W.3d 323, 336 (Mo. App. W.D. 2013) (quoting *Cowbell, LLC v. BORC Bldg. & Leasing Corp.*, 328 S.W.3d 399, 407 (Mo. App. W.D. 2010)). Although the trial court may exercise discretion in

---

[13] Rand's remaining points, Points III, V, VI, VIII, and IX, are denied as moot. These points each discuss the scope of Rand's contractual obligations during the Project, and in each, Rand argues that it met its contractual obligations. However, whether Rand ultimately complied with certain Contract terms is not relevant to our decision in this appeal. As explained above, Rand has failed to specifically prove damages, which is an essential element of both of its claims against Corbion. Therefore, regardless of whether Rand met all of its contractual obligations, Rand cannot recover against Corbion on its breach of contract and enforcement of mechanic's lien claims because of the failure to prove damages. Rand's compliance with specific contract terms does not affect its ability to prove its case against Corbion.

determining the amount to award in attorney's fees, when a contract contains an attorney's fees provision, "'[a]n award in some amount is required by the contract as a matter of law and is not within the trial court's discretion.'" *Martha's Hands, LLC v. Rothman*, 328 S.W.3d 474, 483 (Mo. App. W.D. 2010) (quoting *Mihlfeld & Associates, Inc. v. Bishop & Bishop, L.L.C.*, 295 S.W.3d 163, 174 (Mo. App. S.D. 2009)).

**Analysis**

First, we must determine when Kansas substantive law permits the recovery of attorney's fees. Under Kansas law, attorney's fees "incurred by a prevailing party are not recoverable against the defeated party in the absence of a clear and specific statutory provision or an agreement between the parties." *Idbeis v. Wichita Surgical Specialists, P.A.*, 173 P.3d 642, 646 (Kan. 2007).

Here, the Contract provides for the recovery of attorney's fees by the prevailing party. Section 17.11 of the Contract states that in any proceeding or other action brought by either of the parties pertaining to a dispute or any other matter arising out of the Contract, the "prevailing [p]arty in such proceeding … shall" be entitled to "costs incurred in connection with the proceeding or action, including reasonable fees and disbursements of its attorneys."

Having determined that Kansas law permits a party to recover attorneys' fees pursuant to the Contract, we next analyze when a party "prevails" in Kansas. Kansas case law has defined "prevailing party" as:

> [T]he party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention. The one

20

in whose favor the decision or verdict is rendered and judgment entered . . . The party ultimately prevailing when the matter is finally set at rest.

*Schuh v. Educ. Reading Servs. of Kansas, Inc.*, 626 P.2d 1219, 1220 (Kan. Ct. App. 1981) (quoting *Prevailing Party*, BLACK'S LAW DICTIONARY (5th ed. 1979)). Further, in the context of attorney's fees, "a prevailing party is the party who has an affirmative judgment rendered in his favor at the conclusion of the entire case." *Schuh*, 626 P.2d at 1220.

Here, the trial court acknowledged the Contract's attorney's fees provision in the judgment, stating that the Contract provides "the 'prevailing party' in any lawsuit to recover its attorney's fees, costs, and other disbursements from the other party." However, the trial court declined to award attorney's fees to either party, finding that both Rand and Corbion failed to act "in accordance to the specific and original terms of their agreement and, when beneficial, both Rand and Corbion were selective, casual, and repeatedly indifferent in their application and enforcement of the contract." The judgment did not conduct any analysis as to which party was deemed the "prevailing party," despite finding that, "Plaintiff Rand is not entitled to additional compensation from Defendant Corbion on its claims for enforcement of mechanics [sic] lien, breach of contract, quantum meruit, and action [on] account." Instead, the trial court summarily concluded that neither party was entitled to its attorney's fees or costs.

We note that the Contract is clear that "the prevailing Party in such proceeding or action *shall* be entitled" to its costs and attorney's fees. (emphasis added). Therefore, the trial court is bound by the Contract terms and cannot substitute its

21

own judgment for the plain language of the Contract. At issue, then, is which party meets Kansas' definition of "prevailing party."

We find that under Kansas' definition of "prevailing party," Corbion is the prevailing party and is entitled to its attorney's fees and costs. Because a party prevails when a judgment is entered in their favor, we examine the judgment and not the trial court's reasoning to determine whether Corbion is the "prevailing party" as used in the Contract and defined by Kansas law. Here, Rand brought four causes of action against Corbion, and the trial court denied relief on all four claims, including its breach of contract claim against Corbion, which the trial court found was "[t]he main claim Rand presented at trial for the Court's considerations." Because Rand failed to attain any additional compensation on any of their claims, judgment was rendered in favor of Corbion and against Rand. Said another way, Corbion "successfully defended against" all four claims brought by Rand. Through their successful defense, Corbion is the "party in whose favor" the decision is rendered. *See Schuh*, 626 P.2d at 1220. Corbion, as the prevailing party, is entitled under the Contract to an award of attorney's fees in some amount.

Moreover, the trial court's finding that neither party acted according to the original Contract and thus are not entitled to attorney's fees does not mean that Corbion is *not* the "prevailing party." Corbion does not need to be blameless in order to be the prevailing party. Rather, Corbion must "prevail on the main issue," which, as the trial court duly noted, it did. Ultimately, to be the prevailing party, Corbion must be the party in whose favor judgment is entered. The trial court's judgment

22

found that Rand is not entitled to any additional compensation from Corbion and all of Rand's counts were denied. Corbion is the prevailing party.

In failing to conduct an analysis to determine the prevailing party and award an amount of attorney's fees accordingly, the trial court has abused its discretion. *See Mihlfeld*, 295 S.W.3d at 174. We therefore reverse the trial court's judgment as to attorney's fees and remand the issue back to the trial court for further proceedings consistent with this opinion. [14]

**Conclusion**

Rand failed to prove a necessary element of both its breach of contract and enforcement of its mechanic's lien claims; namely, that Rand suffered damages attributable to Corbion's actions. As such, Rand's Points I, II, VI, VII are denied. Rand's Points III, IV, V, VIII, and IX are denied as moot.

Corbion's single point on cross appeal is granted, and the trial court's judgment as to Corbion's attorney's fees is reversed and remanded for further proceedings consistent with this opinion.

As explained above, the trial court's judgment is affirmed in part and reverse and remanded in part.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

---

[14] Corbion has filed its motion for attorney's fees and costs on appeal. Because, as explained above, Corbion is the prevailing party, we grant Corbion's motion for attorney's fees and costs on appeal. We remand to the trial court to determine the amount of fees and costs to which Corbion is entitled on appeal. Rand filed a similar motion for attorney's fees and costs on appeal. Because Rand did not prevail in either the trial court or this Court, it is not entitled to attorney's fees or costs. Rand's motion for attorney's fees and costs on appeal is thus denied.